[No. S034345. Dec. 28, 1994.]

JAMES P. LENNANE et al., Plaintiffs and Respondents, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

COUNSEL

Daniel E. Lungren, Attorney General, Timothy G. Laddish, Assistant Attorney General, and Richard F. Finn, Deputy Attorney General, for Defendant and Appellant.

Ware & Freidenrich, Gray, Cary, Ware & Freidenrich, John R. Shuman, Jr., Aimee E. Jorgensen and Rebecca P. Falco for Plaintiffs and Respondents.

Jerold A. Reiton, Berliner Cohen, Briskin & Glushon, Robert A. Briskin, Douglas K. Schreiber, Irell & Manella, Gregory R. Smith, Joel Rabinovitz and David Richter as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**KENNARD, J.**—We granted review in this case to construe tax statutes—Revenue and Taxation Code sections 17063.11 and 18162.5—that have been repealed yet continue to govern the disposition of outstanding tax claims in excess of $300 million.[1] At issue is the extent of California income tax liability for capital gain on the sale of "small business stock" that plaintiffs and other California taxpayers acquired on or before September 16, 1981, and sold between 1981 and 1987.

For the tax year 1986 (the tax year at issue here), capital gain from the sale of assets that had been held for more than one year was subject to two kinds of income tax. One portion of the gain (varying according to the type

---

[1] In recommending that we grant the petition for review, defendant Franchise Tax Board explained: "The issue is of great public importance in that approximately 800 taxpayers with a potential amount of revenue (tax plus interest) in excess of $300 million are in the situation involved in [this case]."

of asset and how long the taxpayer had held the asset) was taxed as ordinary income. The remainder of the gain in most cases did not escape taxation entirely but was treated as an "item of tax preference" and separately taxed as "preference income" at rates different from the rates at which ordinary income was taxed. If, however, the capital asset qualified as "small business stock," then the portion of capital gain not counted as ordinary income was also not considered to be "preference income" and did escape taxation entirely. Whether the portion of plaintiffs' capital gain in this case that was not counted as ordinary income was subject to taxation as preference income turns on whether the stock plaintiffs sold, and on which they realized the capital gain, qualified as "small business stock."

As applicable to the tax year at issue here, Revenue and Taxation Code section 17063.11[2] provides that none of the gain from a sale of "small business stock, as defined in Section 18162.5" is subject to tax as preference income. (Stats. 1984, ch. 938, § 8, pp. 3199-3200.) When we turn to section 18162.5 (Stats. 1985, ch. 106, § 133, pp. 322-324), we find in subdivisions (e) and (f) an express definition of the term "small business stock," with neither subdivision making any reference to the date on which the taxpayer acquired the stock. The only reference to acquisition date in section 18162.5 appears in subdivision (d), which in turn refers to subdivision (b). Read together, subdivisions (b) and (d) provide that gain from the sale of small business stock is excluded from taxation *as ordinary income* only if the taxpayer acquired the stock after September 16, 1981, and held the stock for more than three years.

 The question in this case is whether section 17063.11's exemption from preference income tax applies to all small business stock within the definitional language of subdivisions (e) and (f) of section 18162.5, or instead only to small business stock acquired after September 16, 1981. Otherwise stated, the question is whether the acquisition date qualification that by its terms limits only the ordinary income tax exemption for small business stock also implicitly limits the express definition of "small business stock" found in subdivisions (e) and (f) of section 18162.5, which is the definition that section 17063.11 incorporates by reference.

We agree with plaintiff taxpayers that under sections 17063.11 and 18162.5, gains from the sale of small business stock are exempt from preference income taxation regardless of the stock's acquisition date. We

[2]References to sections 17062, 17062.1, 17063, 17063.11, and 18162.5 are to Revenue and Taxation Code sections that were repealed in 1987 (Stats. 1987, ch. 1138, §§ 40, 131, pp. 3911, 3934), but continue to apply to income tax returns for the year 1986. Other section references are to current provisions of that code unless otherwise indicated.

draw this conclusion from both the unambiguous words of these provisions and the history of their legislative enactment.

## I

From 1974 to 1976, plaintiffs James and Susan Lennane acquired stock in Systems Integrators, Inc. (the SII stock). In 1986, plaintiffs sold the SII stock, realizing a substantial capital gain. On their 1986 income tax return, plaintiffs reported 50 percent of this gain as ordinary income, but because they believed that section 17063.11 exempted the gain from preference income taxation, plaintiffs did not report the remaining 50 percent of the gain as preference income.

In March 1991, the Franchise Tax Board (the FTB), which administers California's income tax (§ 19501), sent plaintiffs a "notice of proposed additional tax." In the notice, the FTB observed that plaintiffs had acquired all the SII stock before September 16, 1981, and it proposed that the 50 percent of plaintiffs' gain that was not taxed as ordinary income be taxed as preference income. This resulted in a proposed assessment of $386,911.65, plus interest in the amount of $197,459.82, for a total of $584,371.47. Plaintiffs paid this amount and submitted a claim for refund. The FTB denied the claim.

In October 1991, plaintiffs commenced this lawsuit and soon thereafter moved for summary judgment. Because the material facts were undisputed, the sole issue before the trial court was a question of law: is the preference income tax exemption for gains on the sale of small business stock subject to the acquisition date limitation that applies to the ordinary income tax exemption for the same gains? Answering this question in the negative, the trial court granted summary judgment for plaintiffs, requiring the FTB to refund the preference income tax plaintiffs had paid on the gains from the sale of the SII stock.

The Court of Appeal reversed. It determined that section 17063.11 was ambiguous. It then undertook an analysis of the statutory purpose and the relevant legislative history, from which it concluded that section 17063.11 was intended to apply only to small business stock acquired after September 16, 1981.[3]

---

[3]The Court of Appeal's analysis focused on the legislative findings and legislative history of the 1981 statute that added section 17063.11 to the Revenue and Taxation Code. (Stats. 1981, ch. 534, § 2, pp. 1903-1905.) In section 1 of that statute, the Legislature made findings that "a key element of California's economic growth and prosperity . . . has been the

II

The question before us is whether section 17063.11's preference income tax exemption for capital gains on the sale of "small business stock, as defined in Section 18162.5," applies regardless of the date on which the taxpayer acquired the small business stock. To answer this question, we examine both the text and the enactment history of the relevant statutory provisions, sections 17063.11 and 18162.5.

### A. Statutory Text

■ The applicable principles of statutory construction are well settled. "In construing statutes, we must determine and effectuate legislative intent." (*Woods* v. *Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].) "To ascertain intent, we look first to the words of the statutes" (*ibid.*), "giving them their usual and ordinary meaning" (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140]). If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." (*Kizer* v. *Hanna* (1989) 48 Cal.3d 1, 8 [255 Cal.Rptr. 412, 767 P.2d 679].) "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" (*Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 326 [14 Cal.Rptr.2d 813, 842 P.2d 112].)

■ As it applies to the 1986 tax year, section 17063.11 provides that the "portion of capital gains attributable to the sale of small business stock, *as defined in Section 18162.5*, is not an item of tax preference" to be included in preference income. (Italics added.) Subdivisions (e) and (f) of section 18162.5, in turn, set forth an express and detailed definition of "small

---

founding and expansion of new private businesses" and that the "tax laws, in an inflationary era, provide insufficient incentive for many investors to risk their savings in new businesses." (*Id.* at p. 1903.) The Court of Appeal reasoned that to apply section 17063.11 as providing a preference income tax break to small business stock acquired before the statute took effect would not be consistent with "[t]he manifest intent to encourage investors to risk their savings in start-up and small capitalization companies[. That intent] can only be realized if the investments are made *after* the effective date of the statute," i.e., after September 16, 1981.

The Court of Appeal relied also on contemporaneous reports by the Legislative Analyst, the Assembly Revenue and Taxation Committee, and the Department of Finance on the legislative bill embodying the 1981 statute. Those reports indicated (1) that the bill's "provisions" would apply only to small business stock acquired after the operative date of the statute, and (2) that the bill would result in no revenue loss until the tax year 1985 (when it would first be possible for stock to have been acquired after the statute's operative date and held for three years before being sold).

business stock."[4] Subdivision (e) begins as follows: "For purposes of this section, 'small business stock' is an equity security issued by a corporation which has the following characteristics . . . ." Subdivision (f) begins: "For purposes of this section, 'small business stock' does not include an equity security issued by a corporation which has either of the following characteristics . . . ." Neither subdivision makes any reference to the date on which the taxpayer acquired the stock.

The remaining subdivisions of section 18162.5 do not purport to define the term "small business stock."[5] Reading sections 17063.11 and 18162.5 together, therefore, we conclude that the term "small business stock," for purposes of preference income taxation, does not include an acquisition date limitation.

The FTB challenges this reading of the statutory text. According to the FTB, subdivisions (a), (b), and (d) of section 18162.5 (see fn. 5, *ante*, this page) impliedly modify the express definitional language of subdivisions (e) and (f) and restrict the definition of "small business stock" to stock acquired

---

[4]Subdivision (e) of section 18162.5 provides in relevant part:

"(e) For purposes of this section, 'small business stock' is an equity security issued by a corporation which has the following characteristics at the time of acquisition by the taxpayer: [¶] (1) The commercial domicile or primary place of business is located within California. [¶] (2) The total employment of the corporation is no more than 500 employees . . . . [¶] (3) The outstanding issues of the corporations . . . are not listed on the New York Stock Exchange, the American Stock Exchange, or the National Association of Security Dealers Automated Quotation [NASDAQ] System. [¶] (4) No more than 25 percent of gross receipts in the immediate prior income year were obtained from rents, interest, dividends, or sales of assets. [¶] (5) The corporation is not engaged primarily in the business of holding land. . . ." (Stats. 1985, ch. 106, § 133, pp. 323-324.) Subdivision (e)(6) states an exception to subdivision (e)(4).

Subdivision (f) excludes stock of a corporation that did not comply with subdivision (e)(4) and (e)(5) during the year preceding the taxpayer's sale of the stock.

[5]The remaining subdivisions of section 18162.5 provide in relevant part:

"(a) . . . [O]nly the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset, except gains from small business stock or nonproductive assets, shall be taken into account in computing taxable income: [¶] . . . [¶] (3) Fifty percent if the capital asset has been held for more than five years.

"(b) In the case of any taxpayer, only the following percentages of the gain recognized upon the sale or exchange of small business stock shall be taken into account in computing taxable income: [¶] . . . [¶] (3) Zero percent if the stock has been held for more than three years. . . .

"(c) In the case of any taxpayer, only the following percentages of the gain recognized upon the sale or exchange of nonproductive assets shall be taken into account in computing taxable income: . . .

"(d) Subdivision (b) applies with respect to small business stock acquired after September 16, 1981."

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(g) For purposes of this section, a 'nonproductive asset' is . . . ." (Stats. 1985, ch. 106, § 133, pp. 322-324.)

after September 16, 1981. The FTB reasons as follows: subdivision (a) sets forth general rules on recognition of capital gains as ordinary income, but it expressly excludes "small business stock" from these rules. Subdivision (b) sets forth particular rules on recognition as ordinary income of capital gains on the sale of "small business stock," but subdivision (d) states that these particular rules apply only to "small business stock acquired after September 16, 1981." Thus, stock acquired on or before that date may not be counted under subdivision (b), but neither can it be counted under subdivision (a) if it is "small business stock." Because the stock must be counted under either subdivision (a) or subdivision (b), and because it clearly cannot be counted under subdivision (b), the FTB insists that it must be counted under subdivision (a) as something other than "small business stock." This is possible, the FTB argues, only by construing the term "small business stock" to include the acquisition date limitation of subdivision (d). Therefore, the FTB concludes, section 17063.11's reference for purposes of preference income to "small business stock, as defined in Section 18162.5" includes only small business stock acquired after September 16, 1981.

The FTB asserts that by reporting 50 percent of the gain from the sale of the SII stock as ordinary income under subdivision (a) of section 18162.5, without claiming the ordinary income tax exemption for small business stock under subdivision (b) of section 18162.5, plaintiffs themselves have necessarily conceded that the SII stock is not "small business stock, as defined in Section 18162.5." According to the FTB, that treatment was correct because subdivisions (a), (b), and (d) of section 18162.5 change the very *definition* of small business stock found in subdivisions (e) and (f) to limit it to stock acquired after September 16, 1981.

The error in the FTB's position is its assumption that the acquisition date limitation may be treated as part of the definition of "small business stock." Examination of the text of subdivision (d) of section 18162.5, which contains the acquisition date limitation, shows that this cannot be so. Subdivision (d) states that "[s]ubdivision (b) [setting forth requirements for reporting small business stock capital gains as ordinary income] applies with respect to *small business stock acquired after September 16, 1981*." (Italics added.) This language is not definitional in character. By using the term "small business stock" within the statement of the acquisition date limitation, the subdivision assumes that the term has a meaning apart from that limitation.

We find it unnecessary to disturb the express definition of small business stock in subdivisions (e) and (f) of section 18162.5 to reach the result on which all parties agree, namely, the inclusion in subdivision (a) of small

business stock acquired on or before September 16, 1981. Subdivisions (a), (b), and (c) are interlocking provisions addressing the recognition of capital gain as ordinary income; subdivision (b) and subdivision (c) address the recognition of the two types of capital gains excepted from subdivision (a): small business stock (subd. (b)) and nonproductive assets (subd. (c)).[6] To ensure that together the three subdivisions completely cover all types of capital gains, we need only construe subdivision (a)'s exception of "gains from small business stock" as applying exclusively to gains from small business stock *covered by subdivision (b)*.[7] This construction more directly and understandably achieves the result of including in subdivision (a) capital gains from the sale of small business stock acquired on or before September 16, 1981. It retains intact the express definition that subdivisions (e) and (f) give to the phrase "small business stock." The express definition of subdivisions (e) and (f) is also preferable as a matter of common sense because under it the factors determining whether stock qualifies as small business stock are the characteristics of the corporation, and not the happenstance of when the taxpayer acquired the stock (a characteristic of the taxpayer).

Unlike the construction proposed by the FTB, this reading of section 18162.5 does not depend upon an implicit, not readily apparent, and convoluted interaction of subdivisions (a), (b), and (d). Under the straightforward construction we adopt, section 17063.11's exemption from "tax preference" status of gains from "small business stock, as defined in Section 18162.5" necessarily encompasses the gains from all such stock, regardless of when the taxpayer acquired it.[8]

---

[6]Subdivision (a)'s exception reads in its entirety, "except gains from small business stock or nonproductive assets."

[7]In this case, for example, the SII stock that plaintiffs acquired from 1974 to 1976 and sold in 1986 clearly fits the definition of "small business stock" stated in subdivisions (e) and (f) of section 18162.5, and also was held for more than three years. Subdivision (b), however, which allows recognition of "[z]ero percent" of the gain from a sale of small business stock that has been held for more than three years, does not apply to the SII stock sale because subdivision (d) limits the applicability of subdivision (b) to "small business stock acquired after September 16, 1981." The only other possibly applicable subdivision is (a), which permits recognition of only 50 percent of the gain on the sale of a capital asset held for more than five years.

[8]In the Katz-Harris Taxpayers' Bill of Rights Act (Stats. 1988, ch. 1573, § 2, p. 5668, enacting Rev. & Tax. Code, § 21001 et seq.), the Legislature declared that "the California tax system is based largely on self-assessment, and the development of understandable tax laws and taxpayers informed of those laws will both improve self-assessment and the relationship between taxpayers and government." (§ 21002.) This act does not establish rules for the construction of tax statutes, and we place no reliance on it for our holding in this case, but we note in passing that construing unambiguous language in tax statutes according to the ordinary meaning of the words used is consistent with the legislative goal of "understandable tax laws."

## B. *Enactment History*

Our conclusion is reinforced by the enactment history of sections 17063.11 and 18162.5.

As enacted in 1981 (Stats. 1981, ch. 534, § 2, p. 1903), section 17063.11 provided: "For the purpose of Section 17063 [which listed the items of tax preference that were taxed as preference income], that portion of capital gains attributable to the sale of small business stock, as defined in *Section 18161.5*, is not an item of tax preference" (italics added) to be included in preference income.[9] Section 18161.5, enacted as part of the same statute (Stats. 1981, ch. 534, § 3, pp. 1903-1904), defined "small business stock" without any limitation as to the date when the stock was acquired. Thus, it is indisputable that, as originally enacted, section 17063.11's exemption of small business stock capital gain from taxation as preference income applied without regard to when the taxpayer acquired the stock.[10]

The same 1981 statute that enacted sections 17063.11 and 18161.5 also amended section 18162.5 to exclude from taxation as ordinary income the capital gain on small business stock held for more than three years. (Stats. 1981, ch. 534, § 4, pp. 1904-1905.) Unlike the preference income exclusion of section 17063.11, however, section 18162.5 limited the ordinary income exclusion to gain from "small business stock acquired after the operative date of the act [i.e., September 16, 1981]." (Stats. 1981, ch. 534, § 4, p. 1905.)

In 1983, the Legislature took the definition of small business stock that had appeared in section 18161.5 and incorporated it into section 18162.5 as new subdivision (e), simultaneously repealing section 18161.5. (Stats. 1983, ch. 488, §§ 64-65, pp. 1929-1931.) In 1984, the Legislature further refined the definition of small business stock by adding subdivision (e)(6) and subdivision (f) to section 18162.5. (Stats. 1984, ch. 1575, § 2, pp. 5544-5546.) Neither of these changes restricted the definition of small business stock to stock acquired after a certain date. Also in 1984, the Legislature

---

[9]Sections 17062 and 17062.1 imposed a tax on "preference income." Preference income was composed of the "items of tax preference" listed in section 17063. (Stats. 1984, ch. 938, §§ 4.3-4.5, pp. 3196-3198.) One "item of tax preference," which was subject to certain exceptions such as section 17063.11's exemption for gains from small business stock, consisted of the portion of capital gain excluded from taxation as ordinary income under section 18162.5. In the language of the statute, this item of tax preference is "the difference between (1) the taxpayer's total net capital gains and losses . . . , and (2) the taxpayer's net capital gains and losses recognized by virtue of section 18162.5 for the same taxable year." (§ 17063, subd. (e), as amended by Stats. 1985, ch. 1461, § 11, p. 5199.)

[10]As the Court of Appeal noted, "[t]here is no dispute here that plaintiffs' stock qualified as a 'small business stock' as defined in section 18161.5 . . . ."

amended section 17063.11 to delete the reference to "small business stock as defined in Section 18161.5" and replace it with "small business stock as defined in Section 18162.5." (Stats. 1984, ch. 938, § 8, pp. 3199-3200.)

■ This review of the enactment history of section 17063.11 and 18162.5 demonstrates that from the outset the exclusion of small business stock capital gains from preference income applied regardless of the date when the taxpayer acquired the stock. The acquisition date restriction and statutory structure on which the FTB now relies were originally part of a different statute (section 18162.5) that related only to ordinary income tax, did not purport to contain any definition of small business stock, and was not incorporated by reference into section 17063.11.

Given this enactment history, the Court of Appeal erred in relying on legislative committee reports and the general statement of legislative findings of the 1981 enactment to reach the conclusion that *subsequent* 1983 legislation impliedly changed the meaning of the definition of small business stock simply by transferring that definition from section 18161.5 to section 18162.5. We have been directed to no evidence that would support the conclusion that *in 1983*, when the Legislature moved the definition of "small business stock" from section 18161.5 to 18162.5, it intended the preexisting portions of section 18162.5 to suddenly, implicitly, and silently modify the express terms of that definition. Had the Legislature intended to impose an acquisition date limitation on the preference income exemption for small business stock, it could have achieved this result simply and unambiguously by incorporating the limiting language of subdivision (d) either into the definitional language of subdivision (e) or into the text of section 17063.11. By keeping the acquisition date limitation separate from the definitional language, and from every provision dealing with preference income taxation, the Legislature has imposed no acquisition date limitation on the preference income exclusion under section 17063.11.[11]

### III

We hold that section 17063.11, which excludes from taxation as preference income the gains from the sale of small business stock "as defined in Section 18162.5," applies to any stock defined in subdivisions (e) and (f) of section 18162.5, regardless of when the taxpayer acquired the stock. Accordingly, none of the gain on the sale of plaintiff's SII stock was taxable as

[11]We observe that substantially the same conclusion was reached by the State Board of Equalization in *Appeal of Hagen* (4 SBE 587, Cal. Tax. Rptr. (CCH) ¶ 401-312, filed Apr. 9, 1986) and *Appeal of Harvey* (5 SBE 57, Cal. Tax. Rptr. (CCH) ¶ 402-272, filed Apr. 23, 1992).

preference income, and the trial court correctly ruled that plaintiffs are entitled to a refund of the preference income tax the FTB required them to pay on that gain.

The judgment of the Court of Appeal is reversed and the cause is remanded to the Court of Appeal with directions to affirm the judgment of the trial court.

Lucas, C. J., Mosk, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.