[No. C022484. Third Dist. Dec. 2, 1997.]

MARTIN SOUZA et al., Plaintiffs and Appellants, v.
BURTON LAUPPE et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Haycock & Pomykala, D. Jack Haycock for Plaintiffs and Appellants.

Caulfield, Davies & Donahue, Richard Hyland Caulfield, David N. Tedesco, Diane E. Lockareff, Donahue, Wood, Loving, Myers & Vogel, Mark A.

Bates, Lea & Arruti, Mark Arruti, Porter, Scott, Weiberg & Delehant and Anthony S. Warburg for Defendants and Respondents.

## OPINION

**SCOTLAND, J.**—In this suit between farmers of neighboring parcels, brought after plaintiffs switched from rice to row crops, plaintiffs allege that defendants' rice farming has caused water to seep under and onto plaintiffs' property, resulting in damage to the property and lost profits from plaintiff's farming operations.

Defendants successfully moved for summary judgment on the ground plaintiffs' action is precluded by Civil Code section 3482.5, which provides that a commercial agricultural activity conducted for more than three years consistent with accepted standards in the locality shall not become a nuisance due to any changed condition in the locality if the activity did not constitute a nuisance when it began. (Further section references are to the Civil Code unless otherwise specified.)

On appeal, plaintiffs claim section 3482.5 does not apply because the statute "was never intended to bar [an action] by one farmer against another farmer"; rather, its purpose is to preclude suburban dwellers from seeking to enjoin neighboring agricultural practices. In plaintiffs' words, the statute "was only intended to bar claims by non-agricultural uses 'coming to the nuisance' " as a result of "urban crawl." Defendants retort the plain language of section 3482.5 precludes any lawsuit that attempts to enjoin a lawful, commercial agricultural activity that meets the requisites of the statute.

We agree with defendants' construction of section 3482.5. As we will explain, the plain meaning of the section's unambiguous language does not limit its preclusive effect to nuisance actions commenced by nonagricultural plaintiffs. The statute applies broadly to bar a nuisance action, such as this, brought by one commercial agricultural entity against another commercial agricultural entity. We also reject plaintiffs' claim that their switch from rice to row crops does not constitute a changed condition within the meaning of section 3482.5.

In the unpublished portion of our opinion, we reject plaintiffs' remaining contentions. Accordingly, we shall affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff Mary DeMatos is the owner of real property (the DeMatos parcel) near the Sacramento International Airport. DeMatos and her husband

farmed the property since 1945. Prior to the 1970's, they planted row crops; thereafter, and until 1988, they planted rice.

DeMatos's husband died in 1988. Since then, her daughter, plaintiff Janet Souza, and son-in-law, plaintiff Martin Souza, have managed the DeMatos parcel. In 1988, the Souzas hired plaintiffs Joe Perry, Joaquin Perry and John Perry to farm row crops on the DeMatos parcel.

Defendants are owners and lessees of real property which borders the DeMatos parcel to the north and east. They began farming rice on their property as early as 1983. At that time, the DeMatos parcel also was being used for rice farming.

Sometime after plaintiffs shifted to planting row crops on the DeMatos parcel in 1988, they begin to notice that, when defendants' neighboring rice fields were flooded, the portion of the DeMatos parcel closest to defendants' land became so wet it could not be farmed properly in row crops. Plaintiffs also noticed that the timing of defendants' flooding and subsequent drainage coincided with water intrusion under and onto the DeMatos parcel. They attributed the reduced yields from their sugar beets and safflower crops to excessive seepage of water from defendants' rice growing activities.

Plaintiffs sued. Their complaint states three untitled "causes of action." The first alleges negligence against each defendant "for allowing excessive amount[s] of water to seep under and onto plaintiffs' land," resulting in property damages and lost profits from plaintiffs' farming operations. The second seeks to enjoin defendants' conduct alleged in the first cause of action. The third asserts that defendants' failures to refrain from the actions alleged in the first cause of action constitute unlawful business practices and unfair competition in violation of California Business and Professions Code sections 17200 through 17208.

Defendants moved for summary judgment on the ground that plaintiffs' complaint constitutes a nuisance action and, as such, is precluded by section 3482.5, subdivision (a)(1), which provides in pertinent part: "No agricultural activity . . . conducted or maintained for commercial purposes, and in a manner consistent with proper and accepted customs and standards, as established and followed by similar agricultural operations in the same locality, shall be or become a nuisance, private or public, due to any changed condition in or about the locality, after it has been in operation for more than three years if it was not a nuisance at the time it began."

It is undisputed that plaintiffs did not notice any water intrusion onto their property due to defendants' rice farming until after plaintiffs switched from

growing rice to growing row crops in 1988. Defendants also submitted as undisputed the following facts: Their rice farming is an agricultural activity conducted for commercial purposes in a manner consistent with proper and accepted customs and standards as established and followed by similar agricultural operations in the same locality, has been ongoing for more than three years, and was not a nuisance at the time it began in 1983.

Plaintiffs' papers disputed the last material fact. In their response to defendants' statements of undisputed facts, plaintiffs stated they "do not dispute the manner of [defendants'] rice farming, only that [the] rice farming causes water intrusion onto plaintiff[s'] property and has done so since its inception"; [Defendants'] [r]ice farming did constitute a nuisance at the time rice farming began but not [sic] damage occurred until later." Plaintiffs attached the declaration of a civil engineer, stating his opinion that water has intruded from defendants' property onto the DeMatos parcel since defendants first flooded their fields for rice farming, but that plaintiffs and their predecessors "may not have been aware of the severity of the water intrusion due to the fact that Mr. DeMatos, Mary DeMatos's husband, for several years farmed the subject property to rice and therefore the water intrusion would not have been noticeable."

In addition to asserting that defendants failed to satisfy the requisites of section 3482.5 because their rice farming was a nuisance when it started, plaintiffs argued the statute does not bar this action because (1) legislative history indicates the section was intended only to provide a "coming to the nuisance" defense to actions brought as a result of "urban crawl," and (2) plaintiffs' change from rice to row crops is not a "changed condition in or about the locality" within the meaning of the statute. Thus, plaintiffs argued, the seepage of water onto plaintiffs' property gives rise to tort liability under a variety of theories.

The trial court found that, regardless of how they are denominated, plaintiffs' claims for relief are "in fact based on a theory of nuisance" because they allege the violation of a single primary right, i.e., plaintiffs' right to the unimpaired ownership and undisturbed enjoyment of their premises. Concluding that section 3482.5 "clearly applies to this factual scenario," the court held the statute bars plaintiffs' action because the undisputed facts establish the following: Defendants had been growing rice for more than three years prior to 1989; they did so for a commercial purpose and in a manner consistent with proper and accepted customs and standards in the locality; during the same time period, plaintiffs' predecessor had grown rice exclusively; and "plaintiffs changed their use of the land in 1989" by commencing to grow crops other than rice. Accordingly, the court

granted defendants' respective motions for summary judgment on the ground they had met their burden of showing plaintiffs' complaint has no merit because there is a complete defense to the action. (Code Civ. Proc., § 437c, subds. (c) & (o)(2).)

## DISCUSSION

## I

■ We first address plaintiffs' contention that section 3482.5 does not preclude this action because the statute "was never intended to bar claims of water intrusion from one farmer against another farmer" but "was only intended to bar claims by non-agricultural uses 'coming to the nuisance'. . . ." ■ As the applicability of a statute to a given situation is a question of law, we are not bound by the trial court's determination. (*Southern California Edison Co.* v. *State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8 [102 Cal.Rptr. 766, 498 P.2d 1014].)

■ After reciting the history of urban expansion following World War II and asserting that, when suburban areas expanded into agricultural areas, residents "suddenly discovered the disadvantages of adjacent agricultural enterprises," plaintiffs claim the "imagined threat" of lawsuits against agricultural enterprises by their new suburban neighbors was the sole impetus for the enactment of section 3482.5. To support this claim, they ask us to take judicial notice of various documents purportedly representing the statute's "legislative history," from which we are urged to glean the statute's meaning. (Evid. Code, §§ 451-455, 459.)[1]

For reasons which follow, we shall deny plaintiffs' request for judicial notice and reject their interpretation of section 3482.5.

■ In construing a statute, a court must ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) To determine legislative intent, we first examine the words of the statute. " 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" ' " (*Ibid.*, quoting *Lennane* v. *Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].)

---

[1]"The propriety of the use of extrinsic materials in determining legislative intent is a question which may properly be considered on appeal regardless of whether the issue was raised in the trial court." (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].)

Thus, only when statutory language is susceptible of more than one reasonable interpretation do we look to a variety of extrinsic aids, including the legislative history. (*Granberry* v. *Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970]; *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154].)

As stated previously, subdivision (a)(1) of section 3482.5 provides in pertinent part: "No agricultural activity . . . conducted or maintained for commercial purposes, and in a manner consistent with proper and accepted customs and standards, as established and followed by similar agricultural operations in the same locality, shall be or become a nuisance, private or public, due to any changed condition in or about the locality, after it has been in operation for more than three years if it was not a nuisance at the time it began."[2]

Noting that section 3482.5 does not define the phrases "any changed condition" and "in or about the locality," plaintiffs contend these phrases are uncertain and thus incapable of being understood without resort

---

[2]Section 3482.5 states in its entirety: "(a)(1) No agricultural activity, operation, or facility, or appurtenances thereof, conducted or maintained for commercial purposes, and in a manner consistent with proper and accepted customs and standards, as established and followed by similar agricultural operations in the same locality, shall be or become a nuisance, private or public, due to any changed condition in or about the locality, after it has been in operation for more than three years if it was not a nuisance at the time it began.

"(2) No activity of a district agricultural association that is operated in compliance with Division 3 (commencing with Section 3001) of the Food and Agricultural Code, shall be or become a private or public nuisance due to any changed condition in or about the locality, after it has been in operation for more than three years if it was not a nuisance at the time it began. This paragraph shall not apply to any activities of the 52nd District Agricultural Association that are conducted on the grounds of the California Exposition and State Fair, nor to any public nuisance action brought by a city, county, or city and county alleging that the activities, operations, or conditions of a district agricultural association have substantially changed after more than three years from the time that the activities, operations, or conditions began.

"(b) Paragraph (1) of subdivision (a) shall not apply if the agricultural activity, operation, or facility, or appurtenances thereof obstruct the free passage or use, in the customary manner, of any navigable lake, river, bay, stream, canal, or basin, or any public park, square, street, or highway.

"(c) Paragraph (1) of subdivision (a) shall not invalidate any provision contained in the Health and Safety Code, Fish and Game Code, Food and Agricultural Code, or Division 7 (commencing with Section 13000) of the Water Code, if the agricultural activity, operation, or facility, or appurtenances thereof constitute a nuisance, public or private, as specifically defined or described in any of those provisions.

"(d) This section shall prevail over any contrary provision of any ordinance or regulation of any city, county, city and county, or other political subdivision of the state. However, nothing in this section shall preclude a city, county, city and county, or other political subdivision of this state, acting within its constitutional or statutory authority and not in conflict with other provisions of state law, from adopting an ordinance that allows notification to a prospective

to the legislative history. We disagree. The absence of a definition for each of the statute's terms does not automatically create an ambiguity which requires our resort to the volume of documents plaintiffs proffer as legislative history. ■ Rather, "[a]n ambiguity arises only if '. . . there [is] more than one construction in issue which is semantically permissible, i.e., more than one usage which makes sense of the statutory language given the context and applicable rules of usage.'" (*City of Sacramento* v. *Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 795 [27 Cal.Rptr.2d 545]; 2A Sutherland, Statutory Construction (5th ed. 1992) § 45.02, p. 6 ["Ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses."].)

■ We discern no such ambiguity in the phrases "any changed condition" and "in or about the locality." That the phrases encompass countless varieties of change in all manner of conditions in the general area surrounding the alleged nuisance does not mean the language of the statute is ambiguous. To the contrary, the word "any" expresses an unambiguous legislative intent to broadly apply the statute.

Because there is nothing ambiguous about the language of section 3482.5, subdivision (a)(1), we do not resort to extrinsic materials to discern its meaning. (*Granberry* v. *Islay Investments*, *supra*, 9 Cal.4th at p. 744.) Consequently, we decline to take judicial notice of any of the documents accompanying plaintiffs' request.

Despite the broad language of the statute, plaintiffs suggest section 3482.5, subdivision (a)(1) should not be construed to preclude a nuisance action brought by a commercial agricultural entity against another commercial agricultural entity based upon crop damage caused by the latter's agricultural activity as this would result in absurd consequences that the Legislature could not have intended. (Cf. *People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420] [statutory language should not be given a literal meaning if doing so would result in absurd consequence the Legislature did not intend].) In plaintiffs' view, when a statute intended

homeowner that the dwelling is in close proximity to an agricultural activity, operation, facility, or appurtenances thereof and is subject to the provisions of this section consistent with Section 1102.6a.

"(e) For purposes of this section, the term 'agricultural activity, operation, or facility, or appurtenances thereof' shall include, but not be limited to, the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural commodity including timber, viticulture, apiculture, or horticulture, the raising of livestock, fur bearing animals, fish, or poultry, and any practices performed by a farmer or on a farm as incident to or in conjunction with those farming operations, including preparation for market, delivery to storage or to market, or delivery to carriers for transportation to market."

to protect commercial agricultural activities is applied to the detriment of a commercial agricultural entity, this is an absurd consequence inconsistent with the purpose of the statute. We disagree.

There is nothing absurd about construing section 3482.5, subdivision (a)(1) to prohibit a commercial agricultural entity from suing another commercial agricultural entity on a nuisance theory where defendants' long-standing agricultural activity, conducted in a manner consistent with local customs and standards, caused damage to plaintiffs only after plaintiffs chose to change their agricultural activity to grow different crops. To the contrary, interpreting the statute otherwise would result in the absurd consequence of allowing plaintiffs, by changing their agricultural activity, to dictate that defendants must do likewise, i.e., allow plaintiffs to preclude defendants from continuing to grow rice on their property even though they had done so for over three years consistent with accepted agricultural standards in the locality.

For the reasons stated above, we conclude the language of section 3482.5, subdivision (a)(1) does not limit its preclusive effect to nuisance actions commenced by nonagricultural plaintiffs; the statute applies broadly to bar a nuisance action, such as this, brought by one commercial agricultural entity against another commercial agricultural entity.

Even if, as plaintiffs suggest, the Legislature did not have such an application in mind when it enacted section 3482.5, a different construction is not required because our interpretation of the statute is compelled by the plain meaning of its words, does not frustrate its apparent purpose, and does not result in absurd consequences. (Cf. *Barr* v. *United States* (1944) 324 U.S. 83, 90 [65 S.Ct. 522, 525, 89 L.Ed. 765, 771] [where the Legislature "has made a choice of language which fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated"]; *Neighbours* v. *Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 334 [265 Cal.Rptr. 788] [". . . if there is a flaw in the statutory scheme, it is up to the Legislature, not the courts, to correct it."].)

■ We now turn to plaintiffs' contention that their action is not barred because defendants have not satisfied the requisites of the statute.

For section 3482.5, subdivision (a)(1) to apply, defendants must satisfy seven requisites: The activity alleged to be a nuisance must be (1) an agricultural activity (2) conducted or maintained for commercial purposes (3) in a manner consistent with proper and accepted customs and standards (4) as established and followed by similar agricultural operations in the same

locality; the claim of nuisance arises (5) due to any changed condition in or about the locality (6) after the activity has been in operation for more than three years; and the activity (7) was not a nuisance at the time it began.

By their statements of undisputed facts, defendants have demonstrated that the rice farming which plaintiffs claim has caused the water intrusion onto the DeMatos parcel is an agricultural activity conducted for commercial purposes in a manner consistent with proper and accepted customs and standards as established and followed by similar agricultural operations in the same locality, and that defendants' rice farming had been ongoing for more than three years before plaintiffs first noticed the water intrusion. Therefore, defendants have satisfied requisites one through four and requisite six of the statute.

Defendants also have established by undisputed facts the seventh requisite, i.e., their rice farming was not a nuisance "at the time it began" by 1983. Plaintiffs have failed to create a triable issue of material fact concerning this element because they concede defendants' rice farming caused no damage to the DeMatos parcel from 1983 to 1989 while plaintiffs used the parcel for rice farming. (*Helix Land Co.* v. *City of San Diego* (1978) 82 Cal.App.3d 932, 950 [147 Cal.Rptr. 683] ["An essential element of a cause of action for nuisance is damage or injury."].)

Plaintiffs challenge on appeal only the fifth requisite of the statute: The claim of nuisance arises due to any changed condition in or about the locality. In effect, they argue the condition of their property has not changed, i.e., the property has been farmed commercially with rice or row crops at different times since 1945, and plaintiffs were continuing to use the property for commercial farming at the time they were harmed by water seepage from defendants' rice farming. In their view, the "change from row crops to rice and back to row crops" on the DeMatos parcel does not change the condition of the property as a commercial agricultural activity and, thus, should not be considered a "changed condition" within the meaning of section 3482.5, subdivision (a)(1).

As defendants point out, however, the statute applies to "any" changed condition, and the definition of "change" includes "to make different" and "to make substitution for or among." (Webster's New Internat. Dict. (3d ed. 1993) p. 373.) Applying this common usage as we must, we conclude plaintiffs' "substitution" of row crops for the "different" process of rice farming was a "changed condition" within the meaning of section 3482.5, subdivision (a)(1). (Cf. *People* v. *Catelli* (1991) 227 Cal.App.3d 1434, 1448 [278 Cal.Rptr. 452] [courts must accord the words of a statute their " 'usual,

ordinary, and common sense meaning based on the language used and the evident purpose for which the statute was adopted' "].)

Since the damages alleged by plaintiffs occurred only after they changed the condition of their agricultural activity more than three years after defendants began commercial rice farming in a manner consistent with accepted standards established and followed by similar agricultural activities in the locality, the alleged harm arose "due to" the changed condition within the meaning of 3482.5, subdivision (a)(1).

Because undisputed facts satisfy all the requisites of the statute, as a matter of law defendants' rice farming is not a nuisance. Accordingly, the trial court properly granted summary judgment in defendants' favor.

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Davis, Acting P. J., and Nicholson, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 18, 1998.

---

*See footnote, *ante*, page 865.