58 Cal.Rptr.3d 895 (2007)
150 Cal.App.4th 1207
CALIFORNIA HIGHWAY PATROL, Petitioner,
v.
The SUPERIOR COURT of Santa Cruz County, Respondent;
Richard J. Quigley, Real Party in Interest.
No. H029406.
Court of Appeal of California, Sixth District.
May 17, 2007.
*896 Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, James M. Humes, Chief Assistant Attorney General, Jacob A. Appelsmith, Senior Assistant Attorney General, Miguel A. Neri, Supervising Deputy Attorney General, Fiel D. Tigno, Supervising Deputy Attorney General, Karen Kiyo Huster, Deputy Attorney General, for Petitioner California Highway Patrol.
Lascher & Lascher, Wendy Cole Lascher, Ventura, for Real Party in Interest, Richard J. Quigley.
RUSHING, P.J.

INTRODUCTION
Vehicle Code section 27803, subdivision (b) (hereafter section 27803(b)) requires *897 motorcycle drivers and their passengers to wear safety helmets when riding.[1] The issue in this case is whether a violation of the statute is a correctable infraction, that is, one for which law enforcement authorities may issue a correction citation or "fix-it" ticket. We conclude that a violation of the statute is potentially a correctable offense.

STATEMENT OF THE CASE
Real party in interest Richard J. Quigley (Quigley) received nine citations from Watsonville Police officers and California Highway Patrol (CHP) officers for operating a motorcycle without a proper safety helmet in violation of 27803(b). The record shows that on each occasion, Quigley was wearing either no helmet or a baseball cap embroidered with the letters DOT. After a hearing on January 24, 2005, the trial court deemed all violations to be correctable offenses. On May 20, 2005, the court ordered the CHP to "sign off on certificates of correction for five of Quigley's citations if and when he presented to CHP a helmet bearing a DOT certification symbol. Thereafter, the court issued an order to show cause why the CHP should not be held in contempt for refusing to comply with the court's order. On July 15, 2005, the court held a contempt hearing but postponed a ruling in order to give the CHP an opportunity to challenge the underlying order.
CHP has filed a petition for a writ of mandate and/or prohibition challenging the order and seeking an order that directs the trial court to vacate its May 20, 2005 order.[2] The CHP claims the court erred as a matter of law in deeming the five citations to be correctable offenses and ordering it to "sign off on them.
We agree that the trial court erred. Accordingly, we grant the petition for a writ of mandate.

RELEVANT STATUTES
Section 27803 provides, in relevant part, "(a) A driver and any passenger shall wear a safety helmet meeting requirements established pursuant to Section 27802 when riding on a motorcycle, motor-driven cycle, or motorized bicycle. [¶] (b) It is unlawful to operate a motorcycle, motor-driven cycle, or motorized bicycle if the driver or any passenger is not wearing a safety helmet as required by subdivision (a). [¶] ... [¶] (e) For the purposes of this section, `wear a safety helmet' or `wearing a safety helmet' means having a safety helmet meeting the requirements of Section 27802 on the person's head that is fastened with the helmet straps and that is of a size that fits the wearing person's head securely without excessive lateral or vertical movement, [¶] ... [¶] (g) In enacting this section, it is the intent of the Legislature to ensure that all persons are provided with an additional safety benefit while operating or riding a motorcycle, motor-driven cycle, *898 or motorized bicycle."[3] (Italics added.)
Sections 40610 and 40303.5 list the types of Vehicle Code violations that qualify as correctable offenses and specify the circumstances under which a "fix-it" ticket may be issued.
Section 40610 provides, in relevant part, "(a)(1) ... [I]f, after an arrest, accident investigation, or other law enforcement action, it appears that a violation has occurred involving a registration, license, all-terrain vehicle safety certificate, or mechanical requirement of this code, and none of the disqualifying conditions set forth in subdivision (b) exist and the investigating officer decides to take enforcement action, the officer shall prepare, in triplicate, and the violator shall sign, a written notice containing the violator's promise to correct the alleged violation and to deliver proof of correction of the violation to the issuing agency .... [¶] ... [¶] (b) Pursuant to subdivision (a), a notice to correct violation shall be issued as provided in this section or a notice to appear shall be issued ..., unless the officer finds any of the following: [¶] (1) Evidence of fraud or persistent neglect. [¶] (2) The violation presents an immediate safety hazard. [¶] (3) The violator does not agree to, or cannot, promptly correct the violation."
Section 40303.5 provides, in relevant part, "Whenever any person is arrested for any of the following offenses, the arresting officer shall permit the arrested person to execute a notice containing a promise to correct the violation in accordance with the provisions of Section 40610 unless the arresting officer finds that any of the disqualifying conditions specified in subdivision (b) of Section 40610 .... [¶] ... [¶] (d) Any infraction involving equipment set forth in Division 12 (commencing with Section 24000), Division 13 (commencing with Section 29000), Division 14.8 (commencing with Section 34500), Division 16 (commencing with Section 36000), Division 16.5 (commencing with Section 38000), and Division 16.7 (commencing with Section 39000)."[4] (Italics added.)

DISCUSSION
CHP claims that a violation of section 27803(b) it is not a correctable offense because it does not involve registration, licenses, all-terrain vehicle safety certificates, or mechanical requirements of the Vehicle Code as required by section 40610, subdivision (a)(1).
*899 The CHP further claims that even if generally such a violation could be considered a correctable offense under section 40610, subdivision (a)(1), Quigley's particular violations were not correctable because they were disqualified under all three exceptions in section 40610, subdivision (b). In particular, the CHP argues that (1) Quigley's nine helmet violations reveal a pattern of "persistent neglect" (§ 40610, subd. (b)(1)); (2) each time he rode his motorcycle without a helmet or a proper safety helmet, he posed an immediate "safety hazard" (§ 40610, subd. (b)(2)); and (3) Quigley's statements and actions in opposing the helmet law indicate that he "does not agree to, or cannot, promptly correct" the violations (§ 40610, subd. (b)(3)).
We agree with the CHP that section 40610 does not apply to Quigley's violations. However, as Quigley points out, section 40610 is not the sole or exclusive authority for the issuance of "fix-it" tickets. Section 40303.5 authorizes such tickets for "[a]ny infraction involving equipment set forth in Division 12 (commencing with Section 24000) ...." (§ 40303.5, subd. (d).) A violation of section 27803(b) is an infraction (see § 40000.1), and it is part of Division 12.
The CHP argues that section 40303.5 cannot reasonably be construed to apply generally to all equipment violations in the divisions listed in the statute, and in particular to helmet law violations, because such an interpretation "flies in the face of common sense" and "would yield an absurd result."[5]
Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. (In re Harris (1993) 5 Cal.4th 813, 844, 21 Cal.Rptr.2d 373, 855 P.2d 391.) We begin by examining the statutory language, giving the words their usual and ordinary meaning. If we find no ambiguity, we presume the lawmakers meant what they said, and the plain meaning of the language governs. (Day v. City of Fontana (2001) 25 Cal.4th 268, 272, 105 Cal.Rptr.2d 457, 19 P.3d 1196.) If, on the other hand, the statutory language is unclear or ambiguous and permits more than one reasonable interpretation, we may consider various extrinsic aids to help us ascertain the Legislature's intent, including legislative history, public policy, settled rules of statutory construction, and an examination of the evils to be remedied and the legislative scheme encompassing the statute in question. (Ibid.; People v. Garrett (2001) 92 Cal.App.4th 1417, 1422, 112 Cal.Rptr.2d 643.) In such circumstances, we select the interpretation that comports most closely with the apparent intent of the Legislature, with a view toward promoting, *900 rather than defeating, the general purpose of the statute and avoiding an interpretation that would lead to absurd consequences. (People v. Walker (2002) 29 Cal.4th 577, 581, 128 Cal.Rptr.2d 75, 59 P.3d 150.)
As noted, section 40303.5 generally makes correctable "[a]ny infraction involving equipment" set forth in Divisions 12, 13, 14.8, 16, 16.5, and 16.7 of the Vehicle Code. We presume that when the Legislature enacted section 40303.5, it was aware of the statutes in each of these divisions and the wide variety of equipment that they regulate. (See People v. Harrison (1989) 48 Cal.3d 321, 329, 256 Cal.Rptr. 401, 768 P.2d 1078; Bailey v. Superior Court (1977) 19 Cal.3d 970, 977, fn. 10, 140 Cal.Rptr. 669, 568 P.2d 394.) Indeed, the inclusion of certain divisions and not otherse.g., Divisions 14.1 [transporting explosives], 14.3 [transporting inhalation hazards], 14.5 [transporting radioactive materials], 14.7 [transporting flammable liquids], 14.9 [motor vehicle damage control], and 15 [size, weight, and load]indicates both an awareness of the various statutes and a selective approach concerning which infractions are potentially correctable.
We further note that the ordinary meaning of the word "any" is simple and clear, and its use unambiguously reflects a legislative intent to apply the statute broadly. (Souza v. Lauppe (1997) 59 Cal. App.4th 865, 873, 69 Cal.Rptr.2d 494; see Utility Cost Management v. Indian Wells Valley Water Dist. (2001) 26 Cal.4th 1185, 1191, 114 Cal.Rptr.2d 459, 36 P.3d 2 [use of the word "`any"" serves to "broaden the applicability" of a provision].) Thus, here, the phrase "any infraction" indicates that the Legislature did not intend to limit the type of equipment infractions regulated in the enumerated statutes that could be deemed correctable; rather, the clear, unambiguous statutory language means exactly what it says: any, and thus every, equipment infraction is potentially correctable i.e., the subject of a "fix-it" ticket. (Cf., e.g., Delaney v. Superior Court (1990) 50 Cal.3d 785, 798, 268 Cal.Rptr. 753, 789 P.2d 934 [statutory phrase "`any unpublished information'" referred to all unpublished information, "without limit and no matter what kind"]; Regents of University of California v. East Bay Mun. Utility Dist. (2005) 130 Cal.App.4th 1361, 1373, 31 Cal.Rptr.3d 278 [statutory phrase "`any nondiscriminatory charge'" covered all types of nondiscriminatory charges without limitation]; Souza v. Lauppe, supra, 59 Cal.App.4th at p. 873, 69 Cal.Rptr.2d 494 [statutory phrase "`any changed condition' " not ambiguous or susceptible of more than one reasonable interpretation].)
Despite the statute's lack of ambiguity, the CHP invokes a recognized exception to the plain meaning rule: the literal meaning of unambiguous statutory language "may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole." (Silver v. Brown (1966) 63 Cal.2d 841, 845, 48 Cal.Rptr. 609, 409 P.2d 689; People v. Anzalone (1999) 19 Cal.4th 1074, 1079, 81 Cal.Rptr.2d 315, 969 P.2d 160.) We observe, however, that courts should disregard unambiguous language "only in `extreme cases'those in which, as a matter of law, the Legislature did not intend the statute to have its literal effect." (Gorham Co., Inc. v. First Financial Ins. Co. (2006) 139 Cal.App.4th 1532, 1543, 44 Cal.Rptr.3d 197, quoting Unzueta v. Ocean View School Dist. (1992) 6 Cal. App.4th 1689, 1700, 8 Cal.Rptr.2d 614.)
The CHP does not propose a less literal, reasonable alternative interpretation of the *901 statutory language. Instead, the CHP argues by example, providing three possible applications of the literal language that, according to the CHP, would lead to absurd results. The CHP notes that (1) section 27400 prohibits driving while wearing headsets or earplugs on both ears; (2) section 28150 prohibits the use of radar jamming devices; and (2) section 28100 requires the driver of a pilot car to display at least one red warning flag on each side of the vehicle. The CHP argues that if violations of these statutes were correctable offenses, a violator could simply go to a CHP office, show that he or she is no longer wearing a headset or earplugs, using a radar jamming device, or driving without red flags, and the CHP would have to sign off on the citation. The CHP argues that such results are "absurd" because they "would effectively strip the CHP of its ability to meaningfully enforce these laws." However, the CHP's examples fail to convince us that, as a matter of law, the Legislature did not intend the statutory language to be applied in accordance with its plain meaning.
First, we note that Vehicle Code divisions listed in section 40303.5 regulate an extremely wide variety of things, including not only equipment but also fees, certificates, licenses, and identification.[6] We cannot conceive of a reasonable, but less literal, alternative interpretation of the statutory language that would clearly identify those types or pieces of equipment that would be correctable and distinguish them from the types of equipment that would not be correctable. Moreover, the CHP's avoid-absurd-results approach to construing the statute would subject it to piecemeal interpretation on an equipment-by-equipment basis. We doubt that the Legislature, knowing the different types of equipment regulated by the numerous statutes, would have used the simple and inclusive phrase "any infraction involving equipment" if its intent had been to restrict the statute to infractions involving only certain types of equipment. We find it even more doubtful that the Legislature would have used such language and contemplated that the courts would later narrow the scope of the statute to cover some, but not all, of the infractions involving equipment.
Next, we observe that in the statute itself, the Legislature created a procedure *902 for the issuance of correctable citations that would avoid the absurd consequences and potential enforcement difficulties feared by the CHP. Although the statutory language literally permits any equipment infraction to be the subject of a "fix-it" ticket, the issuance of such a ticket is not automatic. Under the statute, when an officer stops someone for an equipment infraction and decides to take further enforcement action, the officer may decline to issue a "fix-it" ticket if he or she finds (1) there is evidence of fraud or persistent neglect, (2) the infraction presents an immediate safety hazard, or (3) the violator refuses to promptly correct the compliance infraction or cannot promptly do so. (§§ 40303.5, 40610, subds. (b)(1)-(b)(3).)
Thus, turning to the CHP's scenarios, we note that if an officer stops a pilot car driver for not displaying red flags, and the officer decides that under the circumstances further enforcement action is appropriate e.g., because the driver does not have red flags or the driver has red flags but refuses to display themthe officer could find that the infraction presents an immediate safety hazard and issue a regular citation. This would also be the case with infractions involving headsets, earplugs, and radar-jamming devices. This would especially be the case where an officer stops a person for a helmet law infraction, because driving without a proper safety helmet certainly poses an immediate safety hazard to the violator.[7]
Law enforcement officers bear the primary responsibility for enforcing equipment regulations, and the statutory procedure reflects a legislative intent to give them the duty and authority to evaluate the circumstances surrounding an equipment infraction and determine whether it should be treated as a correctable offense. (Cf. §§ 40303 & 40304 [giving arresting officer discretion to issue citation or take violator into custody]). Although the Legislature could have specifically listed the types of equipment infractions that do and do not qualify as correctable offenses, it chose instead to use the all-inclusive statutory phrase "any infraction involving equipment" and then give officers in the field the authority to make factual findings that determine whether an infraction is correctable or not. In doing so, the Legislature indicated its preference for a flexible, fact-based, case-by-case approach to the enforcement of equipment regulations and the issuance of "fix-it" tickets instead of a rigid classification of correctable and noncorrectable infractions. Given this preference, we decline to judicially legislate such a classification system, at least concerning safety helmets.
In short, we do not agree that giving full effect to the unambiguous statutory language *903 will hamper the enforcement of equipment regulations or otherwise result in absurd consequences inconsistent with the manifest purpose of the statute. If the CHP believes that a more rigid classification system would enable it to better enforce equipment regulations, it should seek statutory changes from the Legislature.
The CHP claims that even if section 40303.5 applies to helmet law infractions, the "undisputed facts" demonstrate that Quigley's citations were disqualified under section 40610, subdivision (b).
We reject this claim insofar as it suggests that either the trial court or this court has the authority to make factual findings concerning disqualifying circumstances, especially factual findings based on information not known to an officer at the time a citation was issued.[8] Section 40303.5 unambiguously places sole authority and responsibility for making such determinations on the arresting officer; and the statute envisions that the officer will do so in deciding whether to take further enforcement action by issuing a citation. The statute does not, however, require that the officer make written findings. Generally, absent evidence to the contrary, we presume that "official duty has been regularly performed" (Evid.Code, § 664), and this presumption applies to law enforcement officers, except on the issue of the lawfulness of a warrantless arrest. (Davenport v. Department of Motor Vehicles (1992) 6 Cal.App.4th 133, 141, 7 Cal. Rptr.2d 818; see People v. Farrara (1956) 46 Cal.2d 265, 269, 294 P.2d 21.) Consequently, we may reasonably infer from the type of citation issued that the officer did or did not find disqualifying circumstances. (Cf. People v. Dunlap (1993) 18 Cal. App.4th 1468, 1477, 23 Cal.Rptr.2d 204 [proper to infer that court made necessary foundational findings].)
Here, the officers did not issue "fix-it" tickets to Quigley, and therefore the standard citations that were issued imply a findings that in driving his motorcycle without a proper safety helmet, Quigley presented an immediate safety hazard to himself. As noted, the record reveals that Quigley was driving either without any helmet or with a fabric baseball cap. Such circumstances unquestionably support each officer's implicit finding of a safety hazard and decision not to issue a "fix-it" ticket.
Given our analysis and conclusion that Quigley was properly issued standard citations, we conclude that the trial court erred in disregarding the citing officers' implied findings, which are supported by circumstances surrounding the infractions, and deeming Quigley's infractions to be correctable offenses. Thus, the court further erred in ordering the CHP to "sign off on those citations under penalty of contempt proceedings. Accordingly, we shall grant CHP's petition for a writ of mandate and direct the trial court to vacate its order of May 20, 2005, directing the CHP to "sign off on five of Quigley's helmet violations.[9]

DISPOSITION
Let a peremptory writ of mandate issue directing the Santa Cruz County Superior *904 Court to vacate its order of May 20, 2005, directing the CHP to sign certificates of correction concerning the five citations issued to Richard J. Quigley. Our temporary stay order of November 10, 2005, shall remain in effect until this opinion becomes final.
WE CONCUR: PREMO and DUFFY, JJ.
NOTES
[1] All further statutory references are to the Vehicle Code unless otherwise specified.
[2] On November 10, 2005, this court issued an order staying the May 20, 2005 order and any related contempt proceedings.

On our own motion, we take judicial notice of an order of the superior court filed August 16, 2006, in which the court dismissed all nine citations on grounds that the "helmet law statutes are void for vagueness, or otherwise unworkable, as applied...." (See Evid. Code, § 452, subd. (a).)
Dismissal of the underlying citations does not render the petition moot because the CHP did not comply with the superior court's May 20, 2005 order and is still subject to contempt proceedings, which were postponed.
[3] Section 27802 provides, "(a) The department may adopt reasonable regulations establishing specifications and standards for safety helmets offered for sale, or sold, for use by drivers and passengers of motorcycles and motorized bicycles as it determines are necessary for the safety of those drivers and passengers. The regulations shall include, but are not limited to, the requirements imposed by Federal Motor Vehicle Safety Standard No. 218 (49 C.F.R. Sec. 571.218) and may include compliance with that federal standard by incorporation of its requirements by reference. Each helmet sold or offered for sale for use by drivers and passengers of motorcycles and motorized bicycles shall be conspicuously labeled in accordance with the federal standard which shall constitute the manufacturer's certification that the helmet conforms to the applicable federal motor vehicle safety standards. [¶] (b) No person shall sell, or offer for sale, for use by a driver or passenger of a motorcycle or motorized bicycle any safety helmet which is not of a type meeting requirements established by the department."

"Department" as used in section 27802 refers to the Department of the California Highway Patrol. (§§ 290, 24000.)
[4] The statute also makes offenses involving registration, driver's licenses, and bicycle equipment correctable. (§ 40303.5, subds.(a), (b) & (c).)
[5] The CHP's argument implicitly concedes that a motorcycle helmet is "equipment" and that a failure to comply with section 27803(b) is an "infraction involving equipment." (§ 40303.5, subd. (d).) We agree.

Neither section 40303.5 nor any other section of the Vehicle Code defines the word "equipment." Ordinarily, however, the word means a thinge.g., a tool, an implement, an apparatus, a piece of gear, a devicethat performs, enables, or enhances the performance of some function or activity. (See Webster's Third New International Dictionary (1993) p. 768; Mobilease Corp. v. County of Orange (1974) 42 Cal.App.3d 461, 467, 116 Cal.Rptr. 864 [equipment ordinarily means the implements used in an operation or activity].) It is beyond reasonable dispute that helmets constitute safety equipment like seat belts and are designed and intended to protect motorcycle drivers and passengers from suffering head injuries in the event of an accident.
[6] Division 12 regulates lighting, brakes, windshields, mirrors, horns, sirens, exhaust devices, safety belts, inflatable restraints, children's seats, headsets, earplugs, tires, fenders, televisions, motorcycles, signs, refrigeration, odometers, fire extinguishers, bumpers, signals, and theft alarms. The statutes concerning motorcycles (§§ 27800-27803) regulate seats, handlebars, footrests, and safety helmets.

Division 13 regulates towing, towing devices, and the loading, securing, and transportation logs, poles, lumber, lumber products, baled hay, hazardous materials, workmen, farm labor vehicles, trailers, metal, metal products, baled cotton, boxes, tank containers, waste tires.
Division 14.8 regulates the safe operation of motortrucks, truck tractors, a variety of school buses, tour buses, trailers and semi-trailers, dollies, manufactured homes, park trailers, and commercial motor vehicles over a certain size, grape gondolas, and wheelchair lifts.
Division 16 regulates agricultural implements, including lift carriers, tip-bed trailers, hay loaders, swathers, spray or fertilizer applicator rigs, row dusters, wagons, and lighting equipment.
Division 16.5 regulates off-highway vehicles, including motor-driven cycles, snowmobiles, sand or dune buggies, all-terrain vehicles, and jeeps; lighting equipment, mufflers and exhaust systems, spark arresters, emission control devices, and helmets.
Division 16.7 regulates bicycles.
[7] It is arguable that a radar jamming device should not be deemed "equipment" within the meaning of section 40303.5. First, not every item regulated in the statutes that make up the enumerated divisions can be considered equipment. As noted, the statutes also regulate things like fees, certificates, licenses, and identification. (See, e.g., § 27150.8 [muffler certification]; § 36000 [farm equipment licenses]; §§ 38010-38225 [off-highway vehicle identification, fees, plates, title]).

Second, in general, the fundamental purpose of the regulations is to promote the proper and safe maintenance, performance, and operation of vehicles and the safety of all drivers and passengers. The vast majority of items regulated are things that are specifically designed to achieve that purposee.g., bumpers, lights, seat belts, tires, etc. A radar jammer cannot reasonably be considered a safety device or equipment designed to promote the proper and safe performance and operation of a vehicle. Rather, using a radar jammer is simply prohibited conduct, not unlike having open containers of alcohol or concealed weapons in a vehicle.
[8] For this reason, we reject the CHP's invitation to visit Quigley's website or otherwise take judicial notice of material on his website for the purpose of making a finding that Quigley's citations are disqualified from being treated as correctable.
[9] It follows from our disposition that the contempt proceedings against the CHP, which were stayed pending our resolution of the petition, will abate and must be dismissed.