[No. A131333. First Dist., Div. Four. Nov. 15, 2011.]

GARY GRAVELIN, Plaintiff and Appellant, v.
PAUL SATTERFIELD et al., Defendants and Respondents.

## COUNSEL

Liccardo Law Firm, Salvador A. Liccardo and Paul S. Liccardo for Plaintiff and Appellant.

Roberts Law Firm, Harvey Lewis Roberts, Jr., and Heather Bussing for Defendants and Respondents.

## OPINION

**SEPULVEDA, J.**—Plaintiff Gary Gravelin, a hired worker, was injured while installing a satellite dish on the roof of a residence. He received workers' compensation and brought this separate action against the homeowners for premises liability. The trial court granted a defense summary judgment. We affirm the judgment.

## I.  FACTS

Defendants are Raymond and Charlotte Coolidge and their grandson, Paul Satterfield. Defendants own a home in Mendocino County. The Coolidges contracted with DISH Network to replace their existing satellite dish. DISH Network outsourced the job to Linkus Enterprises, Inc., which sent plaintiff Gary Gravelin to perform the installation job. Plaintiff Gravelin was an employee of Linkus Enterprises, Inc., or an independent contractor retained by that company.

Plaintiff arrived at defendants' home on April 26, 2006. One of the homeowners, Charlotte Coolidge, showed him where the existing satellite dish was installed on the roof. Plaintiff could not directly access the roof where the satellite dish was located because his ladder was too short. Plaintiff owned a 24-foot extension ladder but did not bring it to the worksite. Plaintiff supplied his own truck for work, and his recently purchased pickup truck did not have a ladder rack to transport the long extension ladder. The only ladder plaintiff brought to the worksite was an eight-foot, A-frame ladder.

The homeowners did not tell plaintiff how to access the roof. Plaintiff did a site survey and decided to access the roof using a small roof extension located between the house and carport that was at a lower height than the rest of the roof. Plaintiff told homeowner Charlotte Coolidge where he intended to access the roof, and she expressed no reservations.

The roof extension, or "awning" as plaintiff called it in his deposition, was about four feet square and pitched forward with the front lower than the rear. It was constructed of wood with a rafter at each end. Plaintiff Gravelin testified that the roof extension looked like it was constructed of roofing plywood. It was attached with nails to the house and carport, had supporting wood members that looked like "two by fours," and was covered on the top with asphalt shingles. The roof extension was added to the house "sometime after 1999 or 2000," years after the original construction in the 1970's. Homeowner Raymond Coolidge testified in his deposition that the roof extension was built to provide rain cover as one walked between the house and carport. It was constructed by a local builder, Doug Moyer, who, as a friend of the homeowners, did not charge for his labor. In defendants' answers to interrogatories, defendants stated that the roof extension was "very small" and was never meant to have people climb or walk on it.

Raymond Coolidge is a retired pastor who is 94 years old. As a younger man, Coolidge built several buildings: churches, schools, houses, and a barn. Coolidge never had a building contractor's license. He did not build or help in the building of the roof extension. Raymond Coolidge did not obtain a

building permit to construct the roof extension and does not think he asked Moyer to obtain one. No permit was obtained. Coolidge testified that he was satisfied with the roof extension that Moyer built, believed it was constructed safely, and never had any complaints about it. Raymond Coolidge did not talk with plaintiff Gravelin when Gravelin arrived to install the satellite dish. At the time, Coolidge was bedridden following surgery.

Plaintiff Gravelin testified at his deposition that he looked at the roof extension in selecting it as his access point to the main roof and determined that the extension "appeared to be in good shape." Plaintiff retrieved his eight-foot ladder from the truck and set it up near the roof extension. The height of the lowest edge of the roof extension from the ground is about eight feet. Plaintiff climbed the ladder to a high rung, either the top rung or the one beneath it. Plaintiff stepped up about 24 inches and placed his foot on the roof extension. Plaintiff is six feet seven inches tall and at the time of the accident weighed about 225 pounds. He was carrying tools and equipment weighing about 46 pounds.

As plaintiff stepped off the ladder onto the roof extension, the roof extension collapsed. The roof extension pulled away from the main structure, and its braces struck the ladder. The ladder, roof extension, and plaintiff Gravelin crashed to the ground. Plaintiff felt a shooting pain in his back. Plaintiff was airlifted to a hospital in Santa Rosa, where he remained for four days. Plaintiff suffered a vertebral compression fracture. He takes daily medication to manage the pain. Plaintiff resumed full-time employment around August 2008. He received a workers' compensation settlement from Linkus Enterprises, Inc., in December 2008.

## II. DISCUSSION

### A. *Summary judgment standard*

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

B. *Limitations on the liability of the hirer of an independent contractor*

■ Plaintiff Gravelin was an independent contractor or the employee of one. "Generally, when employees of independent contractors are injured in the workplace, they cannot sue the party that hired the contractor to do the work." (*SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 594 [129 Cal.Rptr.3d 601, 258 P.3d 737], citing *Privette v. Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*).) The same rule applies when the independent contractor, rather than his or her employee, is injured. (*Tverberg v. Fillner Construction, Inc.* (2010) 49 Cal.4th 518, 522 [110 Cal.Rptr.3d 665, 232 P.3d 656] (*Tverberg*).) It therefore does not matter, for purposes of this appeal, whether plaintiff Gravelin was an independent contractor as he asserts, or an employee of one as defendants assert.

The California Supreme Court has explained why the hirer of an independent contractor is usually not held liable for injuries to the contractor or its employees. The independent contractor "has authority to determine the manner in which inherently dangerous . . . work is to be performed, and thus assumes legal responsibility for carrying out the contracted work, including the taking of workplace safety precautions" to protect himself and his employees. (*Tverberg, supra,* 49 Cal.4th at p. 522 [contractor's duty to protect himself]; see *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 671 [36 Cal.Rptr.3d 495, 123 P.3d 931] (*Kinsman*) [contractor's duty to protect its employees].) Thus, the hirer will not be held vicariously liable for injuries resulting from the contractor's negligence in failing to perform its task safely. (*Privette, supra,* 5 Cal.4th at p. 695.) The remedy for the contractor's injured employee is workers' compensation, which is a cost ultimately borne by the contractor's hirer. (*Id.* at p. 692.)

The general rule that a contractor and its employees may not recover tort damages from the contractor's hirer has few exceptions. The undisputed facts show plaintiff Gravelin was either an independent contractor or employed by an independent contractor to perform work on defendant landowners' property and was injured while performing that work. Accordingly, *Privette* bars plaintiff's action absent a triable issue of fact as to whether an exception applies that would permit plaintiff to recover against defendants. (*Privette, supra,* 5 Cal.4th at p. 692.) Plaintiff invokes the exception that imposes direct liability upon a landowner for maintaining premises with a preexisting hazardous condition and failing to warn of that condition. Plaintiff argues that the roof extension was a preexisting hazardous condition.

C. *Premises liability for a preexisting hazardous condition*

" '[T]he basic policy of this state set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to

another by his want of ordinary care or skill in the management of his property. . . . The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative.' " (*Kinsman, supra*, 37 Cal.4th at p. 672, quoting *Rowland v. Christian* (1968) 69 Cal.2d 108, 118–119 [70 Cal.Rptr. 97, 443 P.2d 561] (*Rowland*).) "Applying these principles to the facts before it, in which a social guest injured his hand on a cracked water faucet, the court [in *Rowland*] stated: 'Where the occupier of land is aware of a concealed condition involving in the absence of precautions an unreasonable risk of harm to those coming in contact with it and is aware that a person on the premises is about to come in contact with it, the trier of fact can reasonably conclude that a failure to warn or to repair the condition constitutes negligence. Whether or not a guest has a right to expect that his host will remedy dangerous conditions on his account, he should reasonably be entitled to rely upon a warning of the dangerous condition so that he, like the host, will be in a position to take special precautions when he comes in contact with it.' " (*Kinsman, supra*, at pp. 672–673, quoting *Rowland, supra*, at p. 119.)

■ In *Kinsman, supra*, 37 Cal.4th at page 673, the California Supreme Court considered "how these general principles apply when a landowner hires an independent contractor whose employee is injured by a hazardous condition on the premises." The court modified the general principles and concluded that a hirer may be liable if (1) the hirer "knows or reasonably should know of a concealed, preexisting hazardous condition on its premises; (2) the contractor does not know and could not reasonably ascertain the condition; and (3) the landowner fails to warn the contractor." (*Id.* at pp. 674–675.) As an example, the court referred to a pre-*Privette* case (*Privette, supra*, 5 Cal.4th 689) in which "the employee of an independent contractor, en route to repair a ventilation fan on the hirer's roof, was injured when a mezzanine railing inside the building gave way." (*Kinsman, supra*, at p. 675, citing *Markley v. Beagle* (1967) 66 Cal.2d 951, 955 [59 Cal.Rptr. 809, 429 P.2d 129] (*Markley*).) The *Kinsman* court indicated that, even after *Privette*, the hirers would be liable because " '[t]hey knew or should have known that [the worker] would use the mezzanine to get to the fan on the roof, and the jury could reasonably conclude that . . . the owners were negligent in failing to discover the dangerous condition of the railing and to either correct it or adequately warn [the worker] of it.' " (*Kinsman, supra*, 37 Cal.4th at p. 675, quoting *Markley, supra*, 66 Cal.2d at pp. 955–956.)

But there are important limitations on the liability of a landowner who hires an independent contractor to perform work on the property. The

*Kinsman* court emphasized that liability would "not apply to a hazard created by the independent contractor itself, of which that contractor necessarily is or should be aware." (*Kinsman, supra,* 37 Cal.4th at p. 675, fn. 3.) As an illustration of this point, the court cited a case in which an employee of a concrete subcontractor at a construction site was injured when he fell from an unsecured plank placed by the subcontractor. (*Zamudio v. City and County of San Francisco* (1999) 70 Cal.App.4th 445, 454–455 [82 Cal.Rptr.2d 664].) Nor is a hirer liable if the hazard is apparent, or becomes apparent, and "the contractor nonetheless failed to take appropriate safety precautions." (*Kinsman, supra,* at p. 676.) An example is where a worker continued excavations despite increasing ground saturation and was injured when the oil-saturated ditch caved in. (*Id.* at pp. 675–676, citing *Abrons v. Richfield Oil Corp.* (1961) 190 Cal.App.2d 640, 646 [12 Cal.Rptr. 271].) A hirer is also not liable where a worker is injured because the contractor "has failed to engage in inspections of the premises implicitly or explicitly delegated to it." (*Kinsman, supra,* at p. 677.) Although "[a] landowner's duty generally includes a duty to inspect for concealed hazards," the "responsibility for job safety delegated to independent contractors may and generally does include explicitly or implicitly a limited duty to inspect the premises as well." (*Ibid.*) "Thus, for example, an employee of a roofing contractor sent to repair a defective roof would generally not be able to sue the hirer if injured when he fell through the same roof due to a structural defect, inasmuch as inspection for such defects could reasonably be implied to be within the scope of the contractor's employment. On the other hand, if the same employee fell from a ladder because the wall on which the ladder was propped collapsed, assuming that this defect was not related to the roof under repair, the employee may be able to sustain a suit against the hirer." (*Id.* at pp. 677–678.)

D. *There was no preexisting hazardous condition on the facts presented*

Under the *Kinsman* premises liability exception, defendants could be liable notwithstanding the *Privette* doctrine were there evidence showing (1) defendant homeowners knew or reasonably should have known of a concealed, preexisting hazardous condition on their premises; (2) plaintiff Gravelin did not know and could not reasonably ascertain the condition; and (3) defendants failed to warn plaintiff. (*Kinsman, supra,* 37 Cal.4th at pp. 674–675.) There is no such evidence.

■ The alleged hazard—the roof extension—was not a concealed preexisting hazard. The roof extension was fit for its intended and obvious purpose as a small roof that provided rain shelter. The roof extension became hazardous only when plaintiff misused it as an access point and climbed onto it from a small ladder, applying over 250 pounds of man and equipment in a

dynamic movement. The unsuitability of the roof extension for that purpose was open and obvious. A photograph of the roof extension showed it to be a small, tilted structure placed between the main roof and the carport roof. Plaintiff himself described the roof extension as an "awning" no more than four feet square constructed of plywood and supported by "two by fours." Plaintiff would not have climbed on the structure had he brought a ladder adequate to the task. By his own admission, plaintiff decided to use the roof extension as an access point because his ladder was too short to access the main roof where the satellite dish was located. It is true, as plaintiff notes on appeal, that a homeowner should anticipate people walking on a roof to perform maintenance and repairs. But a homeowner does not reasonably anticipate that a worker will use a small roof extension only four feet square to climb upon on his way to the main roof because he neglected to bring the right ladder.

This case is not "eerily analogous" to *Markley*, as plaintiff contends. (*Markley, supra*, 66 Cal.2d 951.) In *Markley*, the employee of an independent contractor, en route to repair a ventilation fan on the landowners' roof, was injured when a mezzanine railing inside the building gave way, and he fell to the floor below. (*Id.* at p. 955.) The owners were liable because "[t]hey knew or should have known that [the worker] would use the mezzanine to get to the fan on the roof . . ." and, given recent renovations by the owners that removed bins built around the railing, "the jury could reasonably conclude that . . . the owners were negligent in failing to discover the dangerous condition of the railing [that now lacked sufficient support] and to either correct it or adequately warn [the worker] of it." (*Id.* at pp. 955–956.) The worker in *Markley* did not misuse the railing. He apparently used the railing for its intended purpose, as support while walking in the building, and was injured when the railing "gave way" because the owners removed bins previously built around the railing and the bin removal deprived the railing of support necessary to make it safe. (*Id.* at p. 955.) In contrast, plaintiff here used a small roof extension, not for its intended and apparent purpose as a rain shelter, but to climb across to the main roof because he did not bring a ladder tall enough to reach the site of the satellite dish he was asked to replace. A structurally weakened railing that collapses when used for its intended purpose as a handhold is a preexisting concealed hazard. A roof extension that collapses when misused as a climbing base is not a preexisting concealed hazard.

It must also be emphasized that a landowner cannot be held liable where a hazard is "created by the independent contractor [himself], of which that contractor necessarily is or should be aware." (*Kinsman, supra*, 37 Cal.4th at p. 675, fn. 3.) As noted above, the *Kinsman* court used the example of an employee of a concrete subcontractor at a construction site who was injured when he fell from an unsecured plank placed by the subcontractor. (*Kinsman*,

at p. 675 & fn. 3, citing *Zamudio v. City and County of San Francisco, supra,* 70 Cal.App.4th at p. 455.) Here, plaintiff Gravelin was responsible for choosing a safe access point, and it was his poor choice to use a short ladder to climb upon a roof extension that created the hazard.

■ A landowner is also not liable where a worker is injured because the contractor "has failed to engage in inspections of the premises implicitly or explicitly delegated to it." (*Kinsman, supra,* 37 Cal.4th at p. 677.) Although "[a] landowner's duty generally includes a duty to inspect for concealed hazards," the "responsibility for job safety delegated to independent contractors may and generally does include explicitly or implicitly a limited duty to inspect the premises as well." (*Ibid.*) In his deposition, plaintiff conceded that he was trained to conduct site surveys as part of his duties as a satellite dish installer and made a site survey at defendants' home. It was as a result of that site survey, not any instruction from defendant homeowners, that plaintiff chose to access the satellite dish by climbing upon the roof extension. Defendants were not required to warn plaintiff against using his chosen access point. Plaintiff, not the homeowners, assumed responsibility for determining a safe approach to the satellite dish. An independent contractor "has authority to determine the manner in which inherently dangerous . . . work is to be performed, and thus assumes legal responsibility for carrying out the contracted work, including the taking of workplace safety precautions." (*Tverberg, supra,* 49 Cal.4th at p. 522.) It was plaintiff's unfortunate miscalculation of an appropriate access route, not any negligence by defendants, that led to his injury.

Plaintiff maintains that defendants were, at a minimum, negligent in failing to obtain a permit for construction of the roof extension. Plaintiff argues that a landowner's duty to obtain a permit, and to comply with building code requirements generally, are nondelegable duties that defendants could not assign to the builder who constructed the roof extension. But even if this is true, plaintiff has not shown specific violations of the building code and resulting harm that the building code was designed to prevent.

■ Statutes may be used to establish a standard or duty of care in negligence actions. (Evid. Code, § 669.) Evidence Code section 669 "codifies the common law doctrine of negligence per se" and "allows proof of a statutory violation to create a presumption of negligence in specified circumstances." (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 927 [22 Cal.Rptr.3d 530, 102 P.3d 915].) Specifically, Evidence Code section 669, subdivision (a) provides: "The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute,

ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." Subdivision (b) of Evidence Code section 669 sets out limited circumstances under which a defendant may rebut this presumption.

Here, only general provisions of the building code are alleged to have been violated. Defendants' alleged violations are failure to obtain a permit for constructing the roof extension, and failure to comply with a general provision defining a "dangerous building" as one that, among other things, was constructed in violation of the permit requirement or has a portion likely to collapse from faulty construction. It is the permit violation that plaintiff emphasizes on appeal. Missing from plaintiff's briefs in the trial court and on appeal is any citation to building code provisions setting forth specific structural requirements alleged to be violated by defendants. The omission is critical.

Plaintiff was injured when the roof extension collapsed. His injury did not result from the absence of a building permit but from applying too much weight to a small roof extension. It is true, as plaintiff argues, that obtaining a permit would have subjected the roof extension to a county inspection for compliance with building regulations. But that process becomes important only if the roof extension was noncompliant with building regulations specifying structural requirements like standards for minimum weight-bearing capacity. It is compliance with building regulations setting forth specific structural requirements—not the permit process itself—that is relevant here.

On that point, defendants submitted deposition testimony of a mechanical engineer with expertise in the analysis of construction accidents. Defendants' expert witness testified that the roof extension constituted light wood frame construction under the building code and that, in his opinion, "the structural members in the roof extension and their connections complied in the Uniform Building Code for light wood frame construction for residential structures." In response, plaintiff offered his expert's opinion that the roof extension was not properly constructed because it was attached to the building with nails rather than with a metal joist hanger. But no building code regulation requiring attachment by joist hangers was identified. Presumptive negligence under Evidence Code section 669 requires proof of a specific statutory or regulatory violation and resulting harm "of the precise nature a statute [or regulation] was designed to prevent." (*Bologna v. City and County of San Francisco* (2011) 192 Cal.App.4th 429, 435 [121 Cal.Rptr.3d 406].) Plaintiff failed to identify a specific regulation designed to prevent his injury that was violated by defendants. The trial court properly found that there was no breach of a nondelegable duty.

## III.   DISPOSITION

The judgment is affirmed.

Reardon, Acting P. J., and Rivera, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 25, 2012, S198862.