Filed 9/6/23  Petersen v. Alvocado CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| ROBERTA PETERSEN, | |
| Plaintiff and Appellant, | E078660 |
| v. | (Super.Ct.No. MCC1800520) |
| ALVOCADO, LLC et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Angel M. Bermudez, Judge.  Affirmed.

Law Office of John M. Boyko and John M. Boyko for Plaintiff and Appellant.

Reid & Hellyer and Michael G. Kerbs for Defendant and Respondent, Alvocado, LLC.

1

Law Office of Dirck J. Edge and Dirck J. Edge for Defendant and Respondent, Sierra Pacific Farms, Inc.

The Biondi Law Firm and Glen J. Biondi for Defendant and Respondent, Burchett Grading, Inc.

## I.  INTRODUCTION

Plaintiff and appellant Roberta Petersen filed a civil action against defendants and respondents Alvocado, LLC (Alvocado), Sierra Pacific Farms, Inc. (Sierra Pacific), and Burchett Grading, Inc. (Burchett), alleging causes of action for negligence, nuisance, and trespass.  According to plaintiff, in 2011, defendants converted an existing avocado grove into a citrus grove on property owned by Alvocado (the Alvocado Property), but they did so in a manner that "altered the natural course of water flow" on the Alvocado Property. Plaintiff alleged that, as a result of defendants' actions, her neighboring property was damaged by excessive water, mud, and debris following heavy rainstorms in 2015 and 2017.

Defendants alleged an affirmative defense based upon Civil Code[1] section 3482.5, subdivision (a)(1), which provides:  "No agricultural activity . . . conducted . . . for commercial purposes, and in a manner consistent with proper and accepted customs and standards, . . . shall be or become a nuisance . . . due to any changed condition in or about the locality, after it has been in operation for more than three years if it was not a nuisance at the time it began."  (§ 3482.5, subd. (a)(1).)

---

[1] Undesignated statutory references are to the Civil Code.

The trial court ordered a bifurcated trial on the affirmative defense to be conducted first, directed a verdict in favor of defendants following the trial,[2] and entered judgment in favor of defendants. Plaintiff appeals, arguing (1) the trial court erred in excluding evidence of Riverside County Ordinance No. 457.103 (Ordinance 457.103), which purportedly required defendants to obtain a permit before performing agricultural grading on the Alvocado property, and (2) the trial court erred in directing a verdict on the affirmative defense set forth in section 3482.5, subdivision (a)(1). We conclude that each of these contentions has been forfeited and, even in the absence of forfeiture, we would find no error in the record warranting reversal.

---

[2] We recognize that in this case, the trial court took defendants' motion for directed verdict under submission and granted the motion only after the jury returned a verdict in favor of plaintiff in the bifurcated trial. "Typically, if a defendant believes that the plaintiff has not presented substantial evidence to establish a cause of action, the defendant may move for a nonsuit if the case has not yet been submitted to the jury, a directed verdict if the case is about to be submitted, or a judgment notwithstanding the verdict . . . following an unfavorable jury verdict." (*Fountain Valley Chateau Blanc Homeowner's Ass'n. v. Dep't of Veterans Affairs* (1998) 67 Cal.App.4th 743, 750 (*Fountain Valley*); *Cooper v. Takeda Pharmaceuticals America, Inc.* (2015) 239 Cal.App.4th 555, 572 (*Cooper*).) Thus, as a technical matter, the trial court's actions here amount to directing entry of judgment notwithstanding the verdict. Nevertheless, "[w]hile made at different times, the three motions are analytically the same and governed by the same rules." (*Cooper*, at p. 572.) On appeal "[t]he title given to the relief requested is not determinative," and the mislabeling of a motion "does not require reversal of the judgment if the motion was otherwise well taken." (*Carachure v. Scott* (2021) 70 Cal.App.5th 16, 28 (*Carachure*).) Because the parties and the trial court in this case have uniformly referred to the trial court's order as an order directing a verdict, for consistency and clarity, we will also use that term in this opinion.

## II. FACTS AND PROCEDURAL HISTORY

### A. *Pleadings and Procedural History*

According to the operative complaint, plaintiff and Alvocado own neighboring agricultural properties separated by a public road. The Alvocado property had been used to cultivate avocados at least since 1977. In 2011, Alvocado purchased the Alvocado property and hired Sierra Pacific and Burchett to convert the property to grow citrus instead of avocados. As part of this process, defendants uprooted and buried the existing avocado trees on the property. According to plaintiff, this practice "altered the natural course of water flow" from the Alvocado property, eventually causing damage to her neighboring property during storms in 2015 and 2017. As a result of these allegations, plaintiff asserted causes of action for negligence, nuisance, trespass, and permanent injunction against defendants.

Defendants' answer to the complaint asserted, among other things, that section 3482.5, subdivision (a)(1), constituted an affirmative defense to plaintiff's claims. The trial court determined that section 3482.5, subdivision (a)(1), if proven, would constitute an absolute defense to all of plaintiff's claims and ordered a bifurcated trial on the affirmative defense to be conducted first.

In a pretrial ruling, the trial court also excluded evidence of defendants' purported violation of Ordinance 457.103, which plaintiff claimed defendants violated by failing to obtain a grading permit prior to performing their work on the Alvocado property.

4

B. *Relevant Evidence at Trial*

    1. Testimony of Sierra Pacific Owner

The owner of Sierra Pacific testified that his company operated and managed farms on behalf of property owners, with a specialization in growing avocado and citrus. He had a college degree in farm management and had been working on farms for more than forty years. During the course of his career, he had operated farms in Santa Barbara, Ventura, San Diego, Orange, and Riverside counties. His farms specialized in growing avocados and lemons. The owner had previously served on the board of a public water district, had previously served two terms on the board of the California Avocado Commission, and had previously been qualified to testify as an expert in litigation involving farm management.

The owner testified that during the course of his career, he had been involved in the conversion of avocado groves into lemon groves on more than 40 occasions, involving more than 800 acres of farmland, in Riverside and San Diego counties. At the time of trial, Sierra Pacific managed farms on behalf of forty different owners, totaling over 600 acres of farmland in the immediate area of the Alvocado property.

With respect to the Alvocado property, Sierra Pacific had managed the property for approximately four years on behalf of the previous owner of the property. However, the avocado trees in the grove began suffering from disease, which could not be controlled at the time, and the property owner "was struggling to make a profit." In 2006 or 2007, the property owner decided to abandon the avocado grove on the Alvocado property and terminated Sierra Pacific's management agreement. Alvocado purchased

5

the property and decided to hire Sierra Pacific to redevelop the property in 2011. Both Alvocado and Sierra Pacific agreed that the avocado grove on the property had not been properly cared for in years and was "basically dead," and that it would be a better economic decision to convert the grove to a Meyer lemon grove. Alvocado intended to grow the lemons on the property for commercial sale.

The owner of Sierra Pacific testified that he personally visited the Alvocado property every other day during the course of its redevelopment. As part of the redevelopment, agricultural grading was performed on the Alvocado property sometime in August 2011. At the time, Sierra Pacific's standard practice to remove avocado trees was to bury them on site. The owner of Sierra Pacific stated he was personally aware that other farm management companies in the area of the Alvocado property also used this same technique. In the owner's opinion, the procedures employed to redevelop the Alvocado property met the industry standards commonly used at the time. Even after redevelopment, the owner never witnessed any farming practice on the Alvocado property that he believed fell below the industry standard with respect to the management of the property.

On cross-examination, the owner of Sierra Pacific acknowledged that chipping the avocado trees would have been an alternative method for disposing of the existing avocado grove. However, the economic cost of chipping trees becomes unreasonable as the number of trees increases. In his opinion, chipping the trees would not have been an economically viable option for redevelopment of the Alvocado property because the existing avocado grove consisted of an estimated 1000 trees. The owner also recalled

6

that on prior occasions, Sierra Pacific's practice of burying trees had been challenged by a county compliance officer, but each time the County of Riverside determined that the practice was not in violation of any county ordinances or regulations.

### 2. Testimony of Sierra Pacific Vice President

The vice president of agricultural operations at Sierra Pacific testified that he had been employed by Sierra Pacific in various positions for twenty years. He was also currently serving on the board of the California Avocado Commission, which is an industry-wide organization that funds research and marketing activity for the benefit of all avocado growers in the state. He was directly involved in the work performed on the Alvocado property to convert its existing avocado grove into a citrus grove. He recalled that the purpose of this work was to replace a distressed avocado grove with a new crop.

Sierra Pacific hired a grading contractor to remove the existing avocado groves. The process involved using large bulldozers to excavate multiple holes into the ground, push over and crush the existing trees, and bury the crushed trees into the ground. He recalled that the Alvocado property was approximately 20 acres in size and estimated that the number of avocado trees at the time of this work could have numbered up to 2000. He testified that Sierra Pacific Farms had utilized the technique of burying trees on dozens of prior occasions without any interference by government officials. In his career, he had observed this practice "too many times to count."

On cross-examination, the vice president acknowledged that there were other methods to potentially dispose of trees.

3. Testimony of the Owner of Burchett

The owner of Burchett testified that his grading company specialized in agricultural grading. He personally worked as an agricultural grader for over 30 years. While he previously worked for a company owned by his father, he had obtained his own engineering license from the state contractor's board and had been operating his own company for over 10 years.

Burchett performed the work of removing the avocado grove by crushing and burying the trees on the Alvocado property. Between 2000 and 2010, he estimated that five to 10 farms a year would hire Burchett to perform agricultural grading involving the removal and burying of old trees. He also estimated that Burchett had performed similar work in the local area around the Alvocado property for more than 50 separate growers. He had performed similar work for different farm management companies and, in his experience, burying trees was "a very common practice." He could not recall any other situations in which this type of grading process resulted in complaints regarding erosion.

4. Testimony of Plaintiff

Plaintiff testified that she owned the property located across the street from the Alvocado property. At the time that she purchased her property, an avocado grove already existed on the Alvocado property, and the street separating the two properties was already a developed, paved road. She believed that debris from the grading of the Alvocado property caused water to drain onto her property.

8

C. *Verdict and Judgment*

Following the presentation of evidence, defendants moved for a directed verdict in their favor on the affirmative defense set forth in section 3482.5. However, the trial court purported to take the matter under submission, and proceeded to submit the case to the jury. After the jury returned a verdict, the trial court then ruled on the "motions by the defendant for a directed judgment" and concluded that "the Court judges the case, prior to entry of verdict, in favor of [the] defense." Judgment was entered according to the trial court's order, and plaintiff appeals from the judgment.

## III. DISCUSSION

On appeal, plaintiff argues the judgment must be reversed because (1) the trial court erred in excluding evidence of Ordinance 457.103, and (2) the trial court erred in granting defendant's motion for directed verdict. We conclude that each of these contentions has been forfeited and, even in the absence of forfeiture, would conclude that the record does not support plaintiff's claims of error.

A. *Legal Background*

A trial court has wide discretion to regulate the order of proof; order a separate trial of an affirmative defense or any separate issue in furtherance of judicial economy; and determine that such issue should be tried first. (*Finley v. Superior Court* (2000) 80 Cal.App.4th 1152, 1162; Code Civ. Proc., §§ 597, 1048; Evid. Code, § 320.) In this case, the trial court ordered a separate trial on the affirmative defense set forth in section 3482.5, subdivision (a)(1).

9

As relevant here, the statute provides: "No agricultural activity . . . conducted or maintained for commercial purposes, and in a manner consistent with proper and accepted customs and standards, as established and followed by similar agricultural operations in the same locality, shall be or become a nuisance . . . due to any changed condition in or about the locality, after it has been in operation for more than three years if it was not a nuisance at the time it began." (§ 3482.5, subd. (a)(1).) On appeal, the parties do not dispute that the statute constitutes an affirmative defense to all of the claims raised in the complaint.[3]

Some cases have described the affirmative defense as consisting of seven elements: "The activity alleged to be a nuisance must be (1) an agricultural activity (2) conducted or maintained for commercial purposes (3) in a manner consistent with proper and accepted customs and standards (4) as established and followed by similar agricultural operations in the same locality; the claim of nuisance arises (5) due to any changed condition in or about the locality (6) after the activity has been in operation for

---

[3] While section 3482.5, subdivision (a)(1), expressly references only nuisance claims, courts have subsequently interpreted the statute to provide a defense to trespass claims, as well as negligence claims. (*Rancho Viejo v. Tres Amigos Viejos* (*Rancho Viejo*) (2002) 100 Cal.App.4th 550, 562 [rejecting "appellant's attempt to exclude . . . conduct from the reach of the statute by distinguishing between trespass and nuisance theories"]; *W&W El Camino Real*, *LLC v. Fowler* (2014) 226 Cal.App.4th 263, 276 (*El Camino Real*) [concluding that a verdict finding defendant negligent was inconsistent with a finding that section 3482.5, subd. (a)(1), applied because the statute's requirement that a defendant act " 'in a manner consistent with proper and accepted customs and standards' " is the same as finding that a defendant did not breach the applicable standard of care in a negligence action].) Finally, the injunctive relief claim is not an independent cause of action, since " '[i]njunctive relief is a remedy, not a cause of action,' " and " '[a] cause of action must exist before a court may grant a request for injunctive relief.' " (*Ivanoff v. Bank of America*, *N.A.* (2017) 9 Cal.App.5th 719, 734.)

10

more than three years; and the activity (7) was not a nuisance at the time it began."

(*Souza v. Lauppe* (1997) 59 Cal.App.4th 865, 874-875 (*Souza*); *Rancho Viejo*, *supra*, 100 Cal.App.4th at p. 567.)

However, as the trial court observed in this case, the third and fourth requisites are "kind of the same analysis." Further, prior to *Souza*, at least one Court of Appeal published decision described the third and fourth requisites identified in *Souza* as a single statutory prerequisite. (See *Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 306-307.) In our view, the ultimate fact that a defendant must establish to be entitled to the defense is that the challenged activity was conducted "in a manner consistent with proper and accepted customs and standards." (§ 3482.5, subd. (a)(1).) The subsequent phrase "as established and followed by similar agricultural operations in the same locality" (*ibid.*) does not require the defendant to establish an additional ultimate fact but instead limits the evidence that is relevant to establish the proper and accepted customs and standards.[4] Thus, we believe the better analytical approach is to view the third and fourth requisites

---

[4] The limitation is analogous to Health and Safety Code section 1799.110, which imposes a locality requirement when establishing the standard of care applicable to professional negligence cases involving the rendering of emergency medical services. Health and Safety Code section 1799.110 does not change the essential elements of a professional negligence case but instead limits the evidence relevant to establish the standard of care. (*Stokes v. Baker* (2019) 35 Cal.App.5th 946, 966 ["[Health and Safety Code] section 1799.110 applies only to evidence regarding the standard of care . . . ."].)

identified in *Souza* as a single element, and we use this analytical approach in reviewing the claims of error in this case.[5]

B.  *The Trial Court Did Not Abuse Its Discretion in Excluding Evidence*

Plaintiff's first contention on appeal is that the trial court erred by excluding evidence of Ordinance 457.103.  We conclude this issue has been forfeited for failure to develop any argument related to prejudice and further conclude that, even in the absence of forfeiture, the record does not show an abuse of discretion.

1.  General Legal Principles and Standard of Review

Generally, Ordinance 457.103 imposes standards for grading work and requires a property owner to obtain a permit prior to performing such work.  In the appropriate circumstance, an ordinance may be relevant to establish the existence of a nuisance or the standard of reasonable conduct in a negligence action.  (*City of Dana Point v. New Method Wellness, Inc.* (2019) 39 Cal.App.5th 985, 989 [" ' " '[T]he legislature has the power to declare certain uses of property a nuisance and such use thereupon becomes a nuisance *per se*.' . . ." ' 'By ordinance the city legislative body may [also] declare what constitutes a nuisance.' "]; *Ramirez v. Plough, Inc.* (1993) 6 Cal.4th 539, 547 [An ordinance may be relied upon to establish the standard of reasonable conduct in a negligence action.].)

_____

[5]  Ultimately, "[t]he trial court's 'duty to instruct the jury is discharged if its instructions embrace all points of law necessary to a decision.' . . .  A party is not entitled to have the jury instructed in any particular fashion or phraseology, and may not complain if the court correctly gives the substance of the applicable law."  (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 82.)

12

" 'Trial court rulings on the admissibility of evidence . . . are generally reviewed for abuse of discretion.' " (*Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583, 591.)  However, " '[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review.  The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*Ibid.*, quoting *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.)  Additionally, "[a]n appellant seeking reversal based on the erroneous exclusion of evidence ordinarily 'must show that a different result was probable if the evidence had been admitted.' " (*Kline v. Zimmer, Inc.* (2022) 79 Cal.App.5th 123, 134; *Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.)

### 2. Forfeiture

Initially, we must conclude that plaintiff's claim of error in this case has been forfeited.  " ' "There shall be no presumption that error is prejudicial, or that injury was done if error is shown." ' " (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 655 (*IIG Wireless*).)  Thus, an appellant "forfeit[s] [a] claim by failing to develop an argument on [the] point, cite any legal authorities, or explain how they were prejudiced by [the trial court's] ruling." (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 285 (*Hernandez*).)  "An appellate court's responsibility to conduct 'an examination of the entire cause' [citation] is triggered 'when and only when the appellant has fulfilled his duty to tender a proper prejudice argument.  Because of the need to consider the

particulars of the given case, . . . the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice.' [Citation.] These principles are derived from the axiom that prejudice is not presumed and the burden is on the appealing party to demonstrate that prejudice has occurred." (*Adams v. MHC Colony Park*, *L.P.* (2014) 224 Cal.App.4th 601, 614.)

Here, plaintiff's opening brief includes an extensive argument related to why she believes the trial court erred in excluding evidence of defendants' failure to comply with Ordinance 457.103's permitting requirements. However, the opening brief includes no discussion or development of any argument related to how plaintiff was prejudiced by this evidentiary ruling. Instead, in concluding her arguments regarding the trial court's evidentiary ruling, plaintiff includes a single sentence stating: "the court's ruling excluding evidence of the Ordinance and respondent's alleged violation(s) thereof constituted prejudicial error . . . ." A "bare assertion of prejudice" with "no mention at all as to why or how" the trial court's evidentiary ruling "was so prejudicial that reversal is necessary" does not meet an appellant's burden on appeal. (*IIG Wireless*, *supra*, 22 Cal.App.5th at pp. 655-656.) Thus, we conclude that plaintiff has forfeited this claim of error.

### 3. The Trial Court Did Not Abuse Its Discretion in Excluding Evidence

Even absent forfeiture, we would conclude that the trial court did not abuse its discretion in excluding evidence of Ordinance 457.103. On appeal, plaintiff argues that defendants violated Ordinance 457.103 by failing to obtain a permit prior to crushing and

14

burying avocado trees on the Alvocado Property and the trial court should have permitted her to present evidence of defendants' purported failure to obtain a permit. We disagree.

" '[T]o be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law.' " (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1086-1087.) Similarly, to be adopted as relevant evidence of the standard of reasonable conduct in a negligence action, a plaintiff must show that "the ' "harm" ' the plaintiff suffered was ' "one the statute [or ordinance] . . . was designed to prevent." ' " (*Issakhani v. Shadow Glen Homeowners Assn.*, *Inc.* (2021) 63 Cal.App.5th 917, 931; Evid. Code, § 669.) In this case, the trial court concluded that these requirements were not met because Ordinance 457.103 did not apply to defendants' actions. This aspect of the trial court's otherwise discretionary ruling is one that we review independently. (*Cleveland v. Taft Union High School Dist.* (2022) 76 Cal.App.5th 776, 803 ["Issues of statutory interpretation and the application of that interpretation to an established set of facts are questions of law subject to independent review by appellate courts."].)

Ordinance 457.103 on its face provides that its permitting requirements are not applicable to "[t]he raising of crops . . . by an operating farm exclusively for commercial agricultural purposes . . . when all excavated material remains on-site and the agricultural grading or clearing occurs on . . . [¶] (a) Land that has been farmed within the preceding five (5) years . . . ." According to the allegations of plaintiff's own complaint, the Alvocado property "had continuously been maintained as agricultural land used for growing, cultivating and selling avocadoes since at least 1977 up to the time of the events

15

described . . . ." Plaintiff further alleged that defendants, "rather than removing the uprooted avocado trees from their properties, . . . excavate[d] their lands and bur[ied] the uprooted avocado trees in such excavation sites." " 'The admission of fact in a pleading is a "judicial admission" ' "; operates as "a conclusive concession of the truth of the matter"; and is " 'binding on the plaintiff at trial.' " (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 187.) Thus, pursuant to plaintiff's own judicial admissions, Ordinance 457.103 did not apply because the Alvocado property had been farmed within the past five years and any excavated materials remained on the Alvocado property.

Further, even if Ordinance 457.103 might apply, we would still conclude the trial court did not abuse its discretion by excluding evidence of defendants' failure to obtain a permit. The failure to obtain a permit, in and of itself, cannot establish unreasonable conduct. This concept was clearly explained in *Gravelin v. Satterfield* (2011) 200 Cal.App.4th 1209. In *Gravelin*, the plaintiff argued that the failure of the defendant to obtain a permit was sufficient evidence to create a dispute of fact as to whether the defendant was negligent in the construction of a roof extension. (*Id.* at p. 1218.) The Court of Appeal rejected this argument, explaining: "missing from plaintiff's briefs in the trial court and on appeal is any citation to building code provisions setting forth specific structural requirements alleged to be violated by defendants. The omission is critical. [¶] Plaintiff was injured when the roof extension collapsed. His injury did not result from the absence of a building permit . . . . It is true, as plaintiff argues, that obtaining a permit would have subjected the roof extension to a county inspection for compliance with building regulations. But that process becomes important only if the

16

roof extension was noncompliant with building regulations specifying structural requirements like standards for minimum weight-bearing capacity.  It is compliance with building regulations setting forth specific structural requirements—not the permit process itself—that is relevant . . . ."  (*Id.* at p. 1219.)

We believe the reasoning in *Gravelin* equally applies to this case.  While plaintiff focuses her arguments entirely on the failure of defendants to obtain a permit, she has not claimed that defendants' grading work violated any portion of Ordinance 457.103 pertaining to the manner in which grading work should be performed.  Absent this connection, plaintiff has not shown that defendants' failure to obtain a permit under Ordinance 457.103 was relevant to this case, even if defendants had been required to obtain a permit pursuant to Ordinance 457.103.  Only relevant evidence is admissible (Evid. Code, § 350 ), and plaintiff does not meet her burden to show an abuse of discretion where she has failed to explain the relevance of the evidence excluded by the trial court.

C.  *The Trial Court Did Not Err in Directing a Verdict*

Plaintiff also argues the trial court erred in directing a verdict in favor of defendants on the affirmative defense set forth in section 3482.5, subdivision (a)(1).  We conclude the issue has also been forfeited and further conclude that, even in the absence of forfeiture, the trial court did not err in directing a verdict in favor of defendants.

1.  General Legal Principles and Standard of Review

"The rules circumscribing the power of a trial judge to grant a motion for judgment notwithstanding the verdict are well established.  The power to grant such a

17

motion is identical to the power to grant a directed verdict; the judge cannot weigh the evidence or assess the credibility of witnesses; if the evidence is conflicting or if several reasonable inferences may be drawn, the motion should be denied . . . ." (*Castro v. State of California* (1981) 114 Cal.App.3d 503, 512.)  The motion may only be granted " 'when "the court . . . determines there is no evidence of sufficient substantiality to support the claim or defense of the party opposing the motion, or a verdict in favor of that party." [Citation.]  "The function of these motions is to prevent the moving defendant from the necessity of undergoing any further exposure to legal liability when there is insufficient evidence for an adverse verdict." ' " (*Carachure*, *supra*, 70 Cal.App.5th at p. 28.)  " 'On appeal, we decide de novo "whether sufficient evidence was presented to withstand a directed verdict." ' " (*Design Built Systems v. Sorokine* (2019) 32 Cal.App.5th 676, 686 (*Design Built Systems*); *Fariba v. Dealer Services Corp.* (2009) 178 Cal.App.4th 156, 174 [A directed verdict is subject to de novo review.].)

However, our review of the propriety of granting a directed verdict in this case is slightly modified because the trial court directed a verdict in favor of defendants after a bifurcated trial on an affirmative defense.  "[*A*]*t trial*, a defendant raising an affirmative defense has the burden of proving it." (*Consumer Cause*, *Inc. v. Smilecare* (2001) 91 Cal.App.4th 454, 469.)  While "most motions for directed verdict are made by . . . the party that does not have the burden of proof," there "are a few cases addressing motions made by the party that has the burden of proof . . . ." (*Design Built Systems*, *supra*, 32 Cal.App.5th at p. 686; *Newing v. Cheatham* (1975) 15 Cal.3d 351, 358-359 [A motion for directed verdict may be granted in favor of the party who bears the burden of proof.];

18

*Louisville Title Ins. Co. v. Surety Title & Guar. Co.* (1976) 60 Cal.App.3d 781, 787 [same].)  In such a case, instead of merely asking whether there is any evidence to support a verdict in favor of the party opposing the motion, we must ask (1) whether the claim asserted by the party bearing the burden of proof is supported by the evidence; and (2) whether there is any substantial evidence to support a contrary finding in favor of the opposing party.  (*Design Built Systems*, at p. 686; *Newing*, at pp. 358-359 [On review of a directed verdict in favor of plaintiff, the reviewing court must determine whether "the cause of action alleged in the complaint is supported, and no substantial support is given to the defense alleged by the defendant."].)  We apply this modified standard of review in this case.

2.  Forfeiture

Like plaintiff's claim of error in the trial court's evidentiary ruling, we must also conclude that plaintiff's claim of error in directing a verdict has been forfeited.  Even when a claim of error is subject to de novo review, the appellant bears the burden to direct the court to the relevant portions of the record necessary to support her claims.  (*Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 509-510 [claim of error was forfeited regarding directed verdict where opening brief failed to cite to portions of the record necessary to support claims on appeal]; *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 372 [" '[D]e novo review does not obligate [the appellate court] to cull the record for the benefit of the appellant . . . .  As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error . . . ."].)  The appellant bears this burden on appeal, even if she did not

19

bear the burden of proof in the trial court proceedings. (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.)

In this case, our review on appeal requires consideration of the evidence presented at trial in order to determine: (1) whether the evidence is sufficient to support the affirmative defense, and (2) whether substantial evidence was presented that could support a contrary finding. As the appellant, plaintiff bears the burden to fairly summarize the evidence presented at trial and direct our attention to the specific portions of the record showing a conflict in the evidence, despite the fact that defendants bore the burden of proof at trial. Yet the opening brief contains no summary of the trial testimony.[6] Additionally, plaintiff has not cited to any evidence in the record in support of the majority of her arguments regarding specific elements of the affirmative defense[7] or, alternatively, has cited only briefly to portions of the record she believes are favorable to her.[8] Because plaintiff has failed to fully and fairly summarize the evidence presented

---

[6] While the opening brief contains a summary of the background facts and procedural history, plaintiff makes no attempt to set forth the substance of any of the trial testimony in connection with the elements of the affirmative defense at issue.

[7] Plaintiff's argument regarding the second, fourth, fifth, sixth, and seventh elements of the affirmative defense contains no citations to any *evidence* in the record to support her factual assertions. To the extent record citations are included, they refer only to the jury instructions given or the trial court's stated reasons for directing a verdict.

[8] Plaintiff's arguments regarding the first and third elements of the affirmative defense each briefly identify a single answer given by a witness, without presenting any further context regarding the identity of the witness, the witness's competence to testify on the subject, or the greater context of the witness's testimony.

at trial and failed to include proper record citations in support of her arguments, we conclude that her claim of error has been forfeited.

        3.  <u>The Trial Court Did Not Err in Directing a Verdict in Favor of Defendants</u>

Even in the absence of forfeiture, we would conclude the trial court did not err in directing a verdict in favor of defendants. As we have already discussed, to be entitled to the affirmative defense set forth in section 3482.5, subdivision (a)(1), a defendant is required to prove six ultimate facts: (1) the alleged activity subject of the complaint was an agricultural activity; (2) the activity was conducted for commercial purposes; (3) the activity was performed in a manner consistent with proper and accepted customs and standards;[9] (4) the alleged injury resulted from a changed condition on the property as the result of the activity; (5) the activity or changed condition existed for more than three years; and (6) the activity was not a nuisance at the time it began. (§ 3482.5, subd. (a)(1); *Souza*, *supra*, 59 Cal.App.4th at pp. 874-875; *Rancho Viejo*, *supra*, 100 Cal.App.4th at p. 567.)

On appeal, plaintiff concedes that uncontradicted evidence established the fourth and sixth elements: that her alleged injury resulted from a changed condition on the Alvocado property and that defendants' actions were not a nuisance at the time they were conducted. As we explain, our independent review of the record leads us to conclude that the evidence at trial was both sufficient to support the remaining elements set forth in

---

       [9] As we previously explained, the statute also limits the evidence relevant to this element by requiring that the defendant establish the proper standards and customs based only on evidence of the practices followed by similar agricultural operations in the same locality.

section 3482.5, subdivision (a)(1), and conclude that plaintiff failed to present any conflicting evidence sufficient to support a contrary finding in her favor on these elements.

### a. Semantic distinctions do not establish a conflict in the evidence

The first, second, and fifth elements of the affirmative defense required defendants to show that the challenged activity was (1) an agricultural activity (2) conducted for a commercial purpose, and (3) that any changed condition on the property existed for more than three years prior to any alleged nuisance. (§ 3482.5, subd. (a)(1); *Souza*, *supra*, 59 Cal.App.4th at pp. 874-875; *Rancho Viejo*, *supra*, 100 Cal.App.4th at p. 567.) The undisputed evidence at trial showed that the Alvocado property had been the site of an avocado grove consisting of approximately 1000 trees for decades; the previous owner of the property sold the property after disease caused the property to be unprofitable; Alvocado consulted with a farm management company regarding how best to make the property profitable; Alvocado made an economically motivated decision to convert the avocado grove into a Meyer lemon grove; the act of crushing and burying the existing avocado trees in 2011 was part of the conversion of the property for this commercial purpose; and plaintiff did not suffer any damages until more than three years after the grading work was performed. Unquestionably, this evidence supported all three of these elements.

Instead of directing our attention to conflicting evidence in support of a contrary finding, plaintiff presents semantic distinctions in order to describe the same facts with different words. Specifically, plaintiff argues that (1) defendants' actions constituted

22

"waste disposal" activity instead of agricultural activity; (2) defendants' actions constituted "redevelopment activity" instead of commercial activity; and (3) because defendants' actions occurred only in 2011, the acts cannot be considered "in operation" for three years. However, plaintiff has not cited to any authority that would suggest that these semantic distinctions impact the practical application of section 3482.5. The failure to develop these arguments and support them with citations to authorities forfeits the issue. (*City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 681 [failure to cite to legal authority in support of an argument renders the issue forfeited]; *Hernandez*, *supra*, 37 Cal.App.5th at p. 277 [" 'When an appellant raises an issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].) Nor are we persuaded by any of these arguments.

First, the definition of " 'agricultural activity' " for purposes of section 3482.5 is extremely broad and includes "any practices performed by a farmer or on a farm as incident to or in conjunction with those farming operations . . . ." (§ 3482.5, subd. (e).) Thus, even if the agricultural grading in this case can fairly be characterized as waste disposal, such waste disposal was clearly still "incident to" farming operations and would also constitute agricultural activity within the meaning of the statute.

Second, plaintiff's suggestion that an activity can only meet the commercial purposes requirement if it generates a profit is unreasonably restrictive. The California Supreme Court has explained that, generally, a specific act need not itself be profitable to be considered a " 'commercial activity' " or be conducted for a "commercial purpose." (*People v. Cochran* (2002) 28 Cal.4th 396, 405.) Instead, the phrase is commonly

23

understood to include all phases of an activity conducted with the intent to facilitate the buying or selling of goods. (*Ibid.*) Regardless, the undisputed evidence in this case is that the avocado grove on the Alvocado property was diseased and unprofitable; the decision to convert the grove to a lemon grove was in direct response to these conditions; and the decision to crush and bury the avocado trees was the most economically efficient (i.e. the least costly and therefore most profitable) way to convert the grove. Thus, even if we adopted plaintiff's proposed definition that commercial purpose requires that an activity " 'hav[e] profit as the primary aim,' " the undisputed evidence would meet this definition.

Finally, plaintiff argues that defendants' actions cannot be considered "in operation for more than three years" because the jury instructions specifically defined the activity as " 'the activity of crushing and burying avocado trees,' " which occurred only once in 2011. However, if taken to its natural and logical conclusion, this argument actually precludes any recovery by plaintiff in this case. The operative complaint alleges that the basis of plaintiff's negligence and nuisance claims were the defendants' act of "alter[ing] the natural course of water flow from those properties . . . ."[10] At trial,

---

[10] While plaintiff relies heavily on the jury instruction defining the alleged activity as " 'crushing and burying avocado trees,' " she has appealed from a judgment entered on a directed verdict or, more properly, a judgment notwithstanding the verdict. Plaintiff has offered no authority for the proposition that the trial court is bound by the wording of a jury instruction when the jury's verdict is not the basis for entry of judgment. More importantly, even if the trial court had used the agreed upon jury instructions as a guide in assessing the evidence, "we are not bound by the trial court's reasons" and affirm a judgment notwithstanding the verdict "if correct upon any theory of applicable law." (*Cal. Serv. Station Etc. Ass'n v. Am. Home Assur. Co.* (1998) 62 Cal.App.4th 1166, 1171.)

24

plaintiff's counsel specifically represented to the trial court that plaintiff's theory of nuisance was that defendants' actions "caused the erosion problem, which caused surface water to flow across . . . and damage [plaintiff's] property." Thus, the alleged nuisance was a redirection of water that remained "in operation" from 2011 until the time plaintiff suffered her alleged damages. If the physical conditions created by the agricultural grading work in 2011 did not operate to redirect surface water after the grading work was completed in 2011, then there could be no causal connection between defendant's grading work and plaintiff's alleged damages in 2015 and 2017. To adopt such a narrow definition of "in operation" would actually defeat, instead of support, plaintiff's claim on appeal.

For these reasons, we conclude that the evidence presented at trial supported the first, third, and fifth elements of the affirmative defense, and plaintiff failed to present substantial evidence to show a conflict that would warrant a finding in her favor on any of these elements.

b. The undisputed evidence of accepted custom and practice compelled a finding in defendants' favor

The final element of the affirmative defense required defendants so show that the challenged activity was conducted "in a manner consistent with proper and accepted customs and standards, as established and followed by similar agricultural operations in the same locality." (§ 3482.5, subd. (a)(1).) On appeal, plaintiff contends that "[t]here is no evidence in this record that [defendants] have met their burden of proof for this element." We disagree.

25

The owner of Sierra Pacific Farms testified that he held a degree in farm management, had over forty years of personal experience working on farms, and had previously been qualified to testify as an expert in farm management. He had managed farm operations specializing in growing avocados and lemons in multiple counties and had managed farms on behalf of forty different owners involving hundreds of acres in the specific region where the Alvocado property was located. The owner explicitly testified that, in his professional opinion, the procedures employed to redevelop the Alvocado property met the industry standards commonly used at the time. Both the owner of Sierra Pacific and the owner of Burchett testified that other farm management companies in the area of the Alvocado property used the same techniques to crush and bury trees. This evidence clearly supports a finding that defendants' practice was conducted in a manner consistent with proper and accepted customs and standards, as established and followed by similar agricultural operations in the same locality.

The record shows that plaintiff presented no contrary testimony on the issue of accepted customs and standards.[11] We acknowledge that, generally, "[s]o long as it does not do so arbitrarily, a jury may entirely reject the testimony of a[n] . . . expert, even where the [opposing party] does not call any opposing expert and the expert testimony is not contradicted." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 633.) Thus, in most cases, the fact that the party bearing the burden of proof presented uncontradicted

_____

[11] While plaintiff has offered a variety of criticisms regarding defendants' practices in her briefs on appeal, she has not cited to any portion of the record that shows that these criticisms were presented at trial.

26

expert testimony would not warrant a directed verdict because the jury would still be free to reject the expert's testimony and conclude the party failed to meet its burden of proof.

However, an exception to this general principle exists where " 'the [party with the burden of proof] must prove by members of the defendant's profession the standard of care or skill ordinarily used in the practice of that profession at a particular place.' " (*Howard v. Owens Corning*, *supra*, 72 Cal.App.4th at p. 632.)  When the standard of care must be established by expert testimony, uncontradicted expert testimony is " 'conclusive' on the jury." (*Ibid.*; *Sanchez v. Brooke* (2012) 204 Cal.App.4th 126, 138 [" 'In negligence cases arising from the rendering of professional services, . . . the standard of care against which the professional's acts are measured remains a matter peculiarly within the knowledge of experts.  Only their testimony can prove it, unless the lay person's common knowledge includes the conduct required by the particular circumstances.' "].)  As we explain, this exception clearly applies here.

First, section 3482.5, subdivision (a)(1), expressly requires evidence of the practices "established and followed by similar agricultural operations in the same locality" in order to show "proper and accepted customs and standards."  (§ 3482.5, subd. (a)(1).)  Thus, the statute itself contemplates that this issue is one outside of the common knowledge of lay jurors.

Second, as explained in *W&W El Camino Real*, *LLC v. Fowler* (2014) 226 Cal.App.4th 263, this element of the affirmative defense is actually the same as the standard of care in a negligence action premised upon the same conduct.  (*Id.* at p. 276.)  In fact, the Court of Appeal reversed a judgment in favor of the defendant on the grounds

27

that the jury's finding that section 3482.5, subdivision (a)(1), was inconsistent and could not be reconciled with the jury's finding that the defendant had breached the standard of care under a negligence theory. (*W&W El Camino Real*, at p. 276.) As explained by the Court of Appeal, the defendant's actions cannot be considered in compliance with accepted customs and standards while also unreasonable under the circumstances. (*Ibid.*) Thus, because this element of the affirmative defense is coextensive with the standard of care element of plaintiff's negligence cause of action, it should be subject to the same requirements of proof.

Finally, the undisputed testimony in this case was that the crushing and burying of avocado trees on the Alvocado property constituted agricultural grading work performed under the supervision of a licensed engineer. California courts have expressly held that expert testimony is required to establish the standard of care applicable to licensed engineers. (*Allied Properties v. John A. Blume & Associates* (1972) 25 Cal.App.3d 848, 858 [expert testimony required to fix standard of care for professional engineers]; *Huber, Hunt & Nichols, Inc. v. Moore* (1977) 67 Cal.App.3d 278, 313 [error for trial court to instruct that jury could disregard expert testimony of proper professional standards related to architects and professional engineers].) Similarly, the California Supreme Court has applied the expert testimony requirement to claims of negligence involving the alleged failure to construct and maintain proper flood control. (*Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 701-703 [upholding the grant of nonsuit in favor of defendant contractor when plaintiff failed to present expert testimony on standard of care applicable in construction industry to prevent flooding because "[t]hese

28

were not questions which the jury could have resolved from their common experience and the trial judge properly concluded that the issue of the allegedly negligent construction . . . was one within the knowledge of experts only."].)

For the above reasons, we conclude that the issue of what constitutes "proper and accepted customs and standards" within the meaning of section 3482.5, subdivision (a)(1), must be established by expert testimony. The determination clearly falls outside the common knowledge of a lay juror, such that a jury should not be entitled to disregard uncontradicted expert opinion in favor of its own standards. Because the record shows that plaintiff failed to present any competing testimony at the time of trial on this issue, the uncontradicted testimony of defendants' experts would have been conclusive on the jury. Where the jury could not have made a contrary finding on this element, it was proper for the trial court to conclude that there was no substantial evidence to warrant a finding in favor of plaintiff.

Thus, our review of the record leads us to conclude that each element of the affirmative defense set forth in section 3482.5, subdivision (a)(1), was supported by evidence presented at trial and that there was no substantial evidence to support a contrary finding in favor of plaintiff on any of these elements. Given this conclusion, we would find no error in the trial court's decision to direct a verdict in favor of defendants on the affirmative defense even in the absence of forfeiture.

## IV.  DISPOSITION

The judgment is affirmed.  Respondents to recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
                                        J.

We concur:

RAMIREZ
                    P. J.


McKINSTER
                    J.